## Case No. 15,679.

### UNITED STATES v. McGLUE.

[1 Curt. 1;[1] 2 Liv. Law Mag. 395.]

Circuit Court, D. Massachusetts.   Oct. Term, 1851.

CRIMINAL LAW — MURDER — MALICE — INSANITY— DELERIUM TREMENS—PRESUMPTIONS.

1. A blow, with a dangerous weapon, calculated to produce, and actually producing, death, if struck without such provocation as reduces the crime to manslaughter, is deemed by the law malicious, and the killing is murder.

2. The accused must be presumed to be sane till his insanity is proved.

[Cited in Perkins v. Perkins, 39 N. H. 169. Quoted in Carter v. State, 12 Tex. 500.]

3. It is not every kind or degree of insanity which exempts from punishment. If the accused understood the nature of his act; if he knew it was wrong and deserved punishment, he is responsible.

[Quoted in Parsons v. State, 81 Ala. 577, 2 South. 872; Spencer v. State, 69 Md. 46, 13 Atl. 814. Cited in Hovey v. Hobson, 55 Me. 283. Quoted in Cunningham v. State, 56 Miss. 269. Cited in State v. Lewis (Nev.) 22 Pac. 248. Quoted in Carter v. State, 12 Tex. 500; State v. Harrison, 36 W. Va. 747, 15 S. E. 988.]

4. Experts are not allowed to give their opinions on the case, where its facts are controverted; but counsel may put to them a state of facts, and ask their opinions thereon.

[Cited in The Clement, Case No. 2,879.]

[Cited in Rush v. Megee, 36 Ind. 76; Guetig v. State, 66 Ind. 105; Fairchild v. Bascomb, 35 Vt. 414. Cited in brief in State v. Hayden, 51 Vt. 301.]

5. If a person suffering under delirium tremens, is so far insane as not to know the nature of his act, &c., he is not punishable.

[Cited in Beasley v. State, 50 Ala. 149. Quoted in Carter v. State, 12 Tex. 500. Cited in State v. Robinson, 20 W. Va. 733.]

6. If a person, while sane and responsible, makes himself intoxicated, and, while intoxicated, commits murder by reason of insanity, which was one of the consequences of intoxication, and one of the attendants on that state, he is responsible.

[Cited in Hopt v. People, 104 U. S. 633.]

[Cited in Upstone v. People, 109 Ill. 178. Cited in note in O'Herrin v. State, 14 Ind. 422. Cited in Goodwin v. State, 96 Ind. 556; Spencer v. State, 69 Md. 47, 13 Atl. 816; People v. Rogers, 18 N. Y. 17; Evers v. State, 31 Tex. Cr. R. 318, 20 S. W. 748; State v. Robinson, 20 W. Va. 737. Quoted in Carter v. State, 12 Tex. 500.]

7. The law does not presume insanity arose from any particular cause; and if the government asserts that the prisoner was guilty, though insane, because his insanity was drunken madness, this allegation must be proved.

This was an indictment [against James McGlue] for the murder of Charles A. Johnson, first officer of the bark Lewis, of Salem, by the second officer of the bark. One count alleged the offence to have been committed on the high seas, and another in a bay within the dominions of the Imaum of Muscat, a foreign prince or sovereign. The facts, so far as they are necessary to raise the ques-

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

tions of law, appear in the charge to the jury.

Mr. Lunt, U. S. Dist. Atty.

R. Choate and Mr. Northend, for the prisoner.

Before CURTIS, Circuit Justice, and SPRAGUE, District Judge.

CURTIS, Circuit Justice (charging jury). The prisoner is indicted for the murder of Charles A. Johnson. It is incumbent on the government to prove, beyond a reasonable doubt, the truth of every fact in the indictment, necessary, in point of law, to constitute the offence. These facts need not be proved beyond all possible doubt. But a moral conviction must be produced in your minds, so as to enable you to say that, on your consciences, you do verily believe their truth. These facts are in part controverted, and in part, as I understand the course of the trial, not controverted; and it will be useful to separate the one from the other. That there was an unlawful killing of Mr. Johnson, the person mentioned in the indictment, by means substantially the same as are therein described; that the mortal wound, immediately producing death, was inflicted by the prisoner at the bar; that this wound was given, and the death took place on board of the bark Lewis, a registered vessel of the United States, belonging to citizens of the United States; that Johnson was the first, and the prisoner the second, officer of that vessel, at the time of the occurrence; that the vessel at that time was either on the high seas, as is charged in one count, or upon waters within the dominion of the Sultan of Muscat, a foreign sovereign, as is charged in another count; and that the prisoner was first brought into this district after the commission of the alleged offence;—do not appear to be denied, and the evidence is certainly sufficient to warrant you in finding all these facts. They are testified to by all the witnesses. It is not upon a denial of either of these facts that the defence is rested; but upon the allegation, by the defendant, that, at the time the act was done, he was so far insane as to be criminally irresponsible for his act. And this brings you to consider the remaining allegation in the indictment which involves this defence. It is essential to the crime of murder that the killing should be from what the law denominates malice aforethought; and the government must prove this allegation. But it is not necessary to offer evidence of previous threats, or preparation to kill, or that there was a previously premeditated design to kill.

These things, if proved, would be evidence of malice, and proof of this kind is one of the means of sustaining the allegation of malice. But, besides this direct evidence, of what is called in the law express malice, malice may also be inferred, or implied, from the nature of the act of the accused. If a per-

son, without such provocation as the law deems sufficient to reduce the crime to manslaughter, intentionally inflicts, with a dangerous weapon, a blow calculated to produce and actually producing death, the law deems the act malicious, and the offence is murder. The law considers that the party meant to effect what was the natural consequence of his act; that if the natural consequence of his act was death, he meant to kill; and if he so intended, in the absence of such provocation as the law considers sufficient to account for that intent, from the infirmity of human passion, then it is to be inferred that malice existed, and that from that feeling the act was done. In other words, an intention to kill unlawfully, without sufficient provocation, is a malicious intention, and if the intent is executed, the killing is, in law, from malice aforethought, and is murder.

Keeping these principles in view, you will proceed to inquire what the evidence is of a premeditated design to kill; and secondly, whether the act of killing, and the circumstances attending it, were such that malice is to be inferred therefrom. The only evidence, at all tending to show premeditated design, is given by the master of the vessel, and by Saunders, the cabin-boy. The master states that, in a previous part of the voyage, four or five weeks before the time in question, while the vessel was in port, and he himself was absent on shore, some difficulty occurred between the first and second officers, in consequence of which the latter applied to him for his discharge. The witness does not know any thing of the nature or extent of the difficulty, nor of the feeling to which it gave rise in the breast of either party to it, saving that it produced, in the prisoner, a reluctance to continue under the command of the first officer. His discharge was refused; and there is no evidence of any further quarrel between them. It is also sworn by the master and the cabin-boy, that when Mr. Johnson fell, after being stabbed by the prisoner, some of the crew raised him up, and the prisoner said, "It is of no use; I meant to kill him, and I have done it." These expressions are not testified to by any of the crew. In such a scene, it is in accordance with experience, that some witnesses may observe and remember what other witnesses either did not hear or attend to, or have forgotten. And, therefore, when these two witnesses swear to this expression, if you consider they are fair witnesses, and intend to tell the truth, they should be believed in this particular, although others present do not confirm their statement. But, at the same time, upon this question of malice, it does not seem to me the expressions, if used, are important, because they only declare in words what the act of the defendant, in its nature and circumstances, evinces with equal clearness. It is testified, by all the witnesses present at the time, that the vessel being at anchor about three miles from the shore

of the Island of Zanzibar, orders were given by the master to get under way; that the first officer was forward, on the house over the forecastle, attending to his duty; that the crew were variously employed in preparations to make sail; and that the prisoner, being aft, ran forward, jumped on to the house, seized Mr Johnson by the collar with his left hand, and with his sheath knife, which he held in his right hand, stabbed him in the breast, and he dropped dead. When the prisoner seized him, Mr. Johnson said, "What do you mean?" and the prisoner, at the instant he struck the blow, replied, "I mean what I am doing."

Now, gentlemen, if you believe this statement, and there is certainly no evidence in the case to contradict or vary it, every witness concurring with the rest in the substance of it, there can be no question that the killing was malicious, provided the prisoner was, at the time, in such a condition as to be capable, in law, of malice. If you are satisfied the prisoner designedly stabbed Mr. Johnson with a knife, in such a manner as was likely to cause and did cause death, no provocation whatsoever being given at the time, then, in point of law, the killing was from malice aforethought, unless you should also find that the prisoner, when he did the act, was so far insane as to be incapable in law of entertaining malice; for the rules of law concerning malice are all based upon the assumption, that the person who struck the blow was at the time in such a state of mind as to be responsible, criminally, for his act. If he was then so insane that the law holds him irresponsible, it deems him incapable of entertaining legal malice; and, therefore, no malice is, in that case, to be inferred from his act, however atrocious it may have been. And, undoubtedly, one main inquiry in this case is, whether the prisoner, when he struck the blow, was so far insane as to be held by the law irresponsible for intentionally killing Mr. Johnson.

Some observations have been made, by the counsel on each side, respecting the character of this defence. On the one side, it is urged upon you, that the defence of insanity has become of alarming frequency, and that there is reason to believe it is resorted to by great criminals, to shield them from the just consequences of their crimes, when all other defences are found desperate; that there exist in the community certain theories, concerning what is called moral insanity, held by ingenious and zealous persons, and brought forward on trials of this kind, tending to subvert the criminal law, and render crimes likely not to be punished, somewhat in proportion to their atrocity. On the other hand, the inhumanity, and the intrinsic injustice of holding him guilty of murder, who was not, at the time of the act, a reasonable being, have been brought before you in the most striking forms.

These observations of the counsel, on both

sides, are worthy of your attention, and their just effect should be to cause you to follow, steadily and carefully and exactly, the rules of law upon this subject. The general question, whether the prisoner's state of mind, when he struck the blow, was such as to exempt him from legal responsibility, is a question of fact for your decision; the responsibility of deciding which rightly rests upon you alone. But there are certain rules of law, which you are bound to apply, and the court, upon its responsibility, is to lay down; and these rules, when applied, will conduct you to the only safe decision; because these rules will enable you to do what you are sworn to do, that is, to render a verdict according to the law and the evidence given you.

You will observe, then, that this defence of insanity is to be tested and governed by principles of law, and is to be made out in accordance with legal rules. No defendant can be rightly acquitted of a crime by reason of insanity, upon any loose, general notions which may be afloat in the community, or even upon the speculations of men of science. In a court of justice, these must all yield to the known and fixed rules which the law prescribes. And I now proceed to state to you such of them as are applicable to this case.

The first is, that this defendant must be presumed to be sane till his insanity is proved. Men, in general, are sufficiently sane to be responsible for their criminal acts. To be irresponsible because of insanity, is an exception to that general rule. And before any man can claim the benefit of such an exception, he must prove that he is within it. You will therefore take it to be the law, that the prisoner is not to be acquitted, upon the ground of insanity, unless, upon the whole evidence, you are satisfied that he was insane when he struck the blow.

The next inquiry is, what is meant by insanity—what is it which exempts from punishment, because its existence is inconsistent with a criminal intent? Clearly, it is not every kind and degree of insanity which is sufficient. There have been, and probably always are, in the world, instances of men of great general ability, filling, with credit and usefulness, eminent positions, and sustaining through life, with high honor, the most important civil and social relations, who were, upon some one topic or subject, unquestionably insane. There have been, and undoubtedly always are, in the world, many men whose minds are such, that the conclusions of their reason and the results of their judgment, tested by those of men in general, would be very far astray from right. There are many more, whose passions are so strong, and whose conscience and reason and judgment are so weak, or so perverted, that not only particular acts, but the whole course of their lives, may, in some sense, be denominated insane. And there are combinations of these, or some of these deficiencies, or disorders, or perversions, or weaknesses, or dis-

eases. They are an important, as well as a deeply interesting study; and they find their place in that science which ministers to diseases of the mind, and which, in recent times, has done so much to alleviate and remove some of the deepest distresses of humanity. But the law is not a medical or a metaphysical silence. Its search is after those practical rules which may be administered, without inhumanity, for the security of civil society, by protecting it from crime. And, therefore, it inquires, not into the peculiar constitution of mind of the accused, or what weaknesses, or even disorders, he was afflicted with, but solely whether he was capable of having, and did have, a criminal intent. If he had, it punishes him; if not, it holds him dispunishable. And it supplies a test by which the jury is to ascertain whether the accused be so far insane as to be irresponsible. That test is, the capacity to distinguish between right and wrong, as to the particular act with which the accused is charged. If he understands the nature of his act; if he knows his act is criminal, and that if he does it, he will do wrong and deserve punishment, then, in the judgment of the law, he has a criminal intent, and is not so far insane as to be exempt from responsibility. On the other hand, if he is under such delusion as not to understand the nature of his act, or if he has not sufficient memory and reason and judgment to know that he is doing wrong, or not sufficient conscience to discern that his act is criminal and deserving punishment, then he is not responsible.

This is the test which the law prescribes, and these are the inquiries which you are to make on this part of the case—Did the prisoner understand the nature of his act when he stabbed Mr. Johnson? Did he know he was doing wrong, and would deserve punishment? Or, to apply them more nearly to this case—Did the prisoner know that he was killing Mr. Johnson; that so to do was criminal and deserving punishment? If so, he had the criminal intent necessary to convict him of the crime of murder, and he cannot be acquitted on the ground of insanity. It is not necessary here to consider a case of a person killing another under a delusive idea, which, if true, would either mitigate or excuse the offence, for there is no evidence pointing to any such delusion.

It is asserted by the prisoner, that when he struck the blow he was suffering under a disease known as delirium tremens. He has introduced evidence tending to prove his intemperate drinking of ardent spirits during several days before the time in question, and also certain effects of this intemperance. Physicians of great eminence, and particularly experienced in the observation of this disease, have been examined on both sides. They were not, as you observed, allowed to give their opinions upon the case; because the case, in point of fact, on which any one might give his opinion, might not

be the case which you, upon the evidence, would find; and there would be no certain means of knowing whether it was so or not. It is not the province of an expert to draw inferences of fact from the evidence, but simply to declare his opinion upon a known or hypothetical state of facts; and, therefore, the counsel on each side have put to the physicians such states of fact as they deem warranted by the evidence, and have taken their opinions thereon. If you consider that any of these states of fact put to the physicians are proved, then the opinions thereon are admissible evidence, to be weighed by you. Otherwise, their opinions are not applicable to this case. And here, I may remark, gentlemen, that, although, in general, witnesses are held to state only facts, and are not allowed to give their opinions in a court of law, yet this rule does not exclude the opinions of those whose professions and studies, or occupations, are supposed to have rendered them peculiarly skilful concerning questions which arise in trials, and which belong to some particular calling or profession. We take the opinions of physicians in this case for the same reason we resort to them in our own cases out of court, because they are believed to be better able to form a correct opinion, upon a subject within the scope of their studies and practice, then men in general, and, therefore, better than those who compose your panel. But these opinions, though proper for your respectful consideration, and entitled to have, in your hands, all that weight which reasonably and justly belong to them, are nevertheless not binding on you, against your own judgment, but should be weighed, and, especially where they differ, compared by you, and such effect allowed to them as you think right; not forgetting, that on you alone rests the responsibility of a correct verdict. Besides these opinions, upon cases assumed by the counsel, which you may find to correspond more or less nearly with the actual case on trial, the physicians have also described to you the symptoms of the disease of delirium tremens. They all agree that it is a disease of a very distinct and strongly marked character, and as little liable to be mistaken as any known in medicine. All the physicians have described it substantially in the same way. I will read to you from my notes that given by Dr. Bell. He says the symptoms are: (1) Delirium, taking the form of apprehensiveness on the part of the patient. He is fearful of something,—fears pursuit by officers or foes. Sometimes demons and snakes are about him. In the earlier stages, in attempting to escape from his imaginary pursuers, he will attack others as well as injure himself. But he is much more apprehensive of receiving injury, than desirous of inflicting it, except to escape. He is generally timid and irresolute, and easily pacified and controlled. (2) Sleeplessness. I believe delirium tremens cannot exist without this. (3) Tremulousness, especially of the hands, but showing itself in the limbs and the tongue. (4) After a time sleep occurs, and reason thus returns. I do not recall any instance in which sleep came on in less than three days, dating from the last sleep. At first it is rather broken, not giving full relief; and this is followed by very profound sleep, lasting six or eight hours, from which the patient awakes sane.

Dr. Stedman, who, from his care of the Marine Hospital at Chelsea, and of the City Hospital at South Boston, has had great experience in the treatment of this disease, after describing its symptoms substantially as Dr. Bell did, says its access may be very sudden, and he has often known it first manifest itself by the patients attacking those about them, regarding them as enemies; that it is in accordance with his experience, that a case may terminate within two days of the time when the delirium first manifests itself, and that it rarely lasts more than four days; that he has arrested the disease in forty-eight hours by the use of sulphuric ether.

Taking along with you these accounts of the symptoms and course and termination of this disease, you will inquire whether the evidence proves these symptoms existed in this case; and whether the previous habits and the intemperate use of ardent spirits, from which this disease springs, are shown; and whether the recovery of the prisoner corresponded with the course and termination of the disease of delirium tremens, as described by the physicians.

In respect to the previous intemperance of the prisoner, and the symptoms, course, and termination of the disease, you are to look to the accounts of the conduct and acts of the prisoner, given by his shipmates. Their testimony will be fresh in your recollection, and it is not necessary for me to detail it. How recently before the homicide had he slept? Was his demeanor, for two or three days previous, natural, or was he restless? Was any tremor of the hands or limbs visible, and if so, was it very marked or not? Did he utter any exclamations manifesting apprehensiveness before or immediately after the act? When, and under what circumstances, did he recover his reason, if he was delirious, and especially did he recover it without sleep? These are all important inquiries to be made by you, and answered, as a careful consideration of the evidence may convince you they should be answered.

It is not denied, on the part of the government, that the prisoner had drunk intemperately of the ardent spirit of the country during some days before the occurrence. But the district attorney insists, that he had continued so to drink, down to a short time before the homicide; and that when he struck the blow it was in a fit of drunken madness. And this renders it necessary for

me to instruct you concerning the law upon the state of facts, which the prosecutor asserts existed.

Although delirium tremens is the product of intemperance, and therefore in some sense is voluntarily brought on, yet it is distinguishable, and by the law is distinguished, from that madness which sometimes accompanies drunkenness. If a person suffering under delirium tremens is so far insane as I have described to be necessary to render him irresponsible, the law does not punish him for any crime he may commit. But if a person commits a crime under the immediate influence of liquor, and while intoxicated, the law does punish him, however mad he may have been. It is no excuse, but rather an aggravation of his offence, that he first deprived himself of his reason before he did the act. You will easily see that there would be no security for life or property, if men were allowed to commit crimes with impunity, provided they would first make themselves drunk enough to cease to be reasonable beings. And, therefore, it is an inquiry of great importance in this case, and, in the actual state of the evidence, I think, one of no small difficulty, whether this homicide was committed while the prisoner was suffering under that marked and settled disease of delirium tremens, or in a fit of drunken madness. My instruction to you is, that if the prisoner, while sane and responsible, made himself intoxicated, and while intoxicated committed a murder by reason of insanity, which was one of the consequences of that intoxication, and one of the attendants on that state, then he is responsible in point of law, and must be punished. This is as clearly the law of the land as the other rule, which exempts from punishment acts done under delirium tremens. It may sometimes be difficult to determine under which rule, in point of fact, the accused comes. Perhaps you will think it not easy to determine it in this case. But it is the duty of the jury to ascertain from the evidence on which side of the line this case falls, and to decide accordingly. It may be very material for you to know on which party is the burden of proof in this part of the case. I have already told you, that it is incumbent on the prisoner to satisfy you he was insane when he struck the blow; for the reason that, as men in general are sane, the law presumes each man to be so till the contrary is proved. But if the contrary has been proved; if you are satisfied the prisoner was insane, the law does not presume his insanity arose from any particular cause; and it is incumbent on the party which asserts that it did arise from a particular cause, and that the prisoner is guilty, by law, because it arose from that cause, to make out this necessary element in the charge to the same extent as every other element in it. For the charge then assumes this form,—that the prisoner

committed a murder, for which, though insane, he is responsible, because his insanity was produced by, and accompanied a state of intoxication. In my judgment, the government must satisfy you of these facts, which are necessary to the guilt of the prisoner in point of law, provided you are convinced he was insane. You will look carefully at all the evidence bearing on this question, and if you are convinced that the prisoner was insane, to that extent which I have described as necessary to render him irresponsible, you will acquit him; unless you are also convinced his insanity was produced by intoxication, and accompanied that state; in which case you will find him guilty.

The prisoner was acquitted.