### E. W. DUKE v. THE STATE.

#### No. 757. Decided December 7, 1910.

#### Rehearing Denied March 1, 1911.

**1.—Murder—Jury and Jury Law—Challenges for Cause.**

Where, upon appeal from a conviction of murder, the bill of exceptions did not show that appellant exhausted his peremptory challenges and thereafter was required to accept a juror who was subject to disqualification or challenge for cause, there was no error; besides the jurors complained of were challenged peremptorily and did not sit in the case.

**2.—Same—Evidence—Delirium Tremens.**

Where, upon trial of murder, a witness was unable to define delirium tremens, there was no error to exclude his declaration that the defendant was on the point of delirium tremens the night prior to the homicide.

**3.—Same—Evidence—Shorthand Facts.**

Upon trial of murder there was no error to show by the State's witness that the defendant was quiet, sober and cool while he was showing witness the pistol and shotgun; besides the bill of exceptions did not show what connection this matter had with the homicide.

**4.—Same—Evidence—Expert Witness—Question of Fact.**

Where, upon trial of murder, one of defendant's witnesses had qualified as an expert on mental diseases and had testified that the defendant though legally sane was of a very low order of mentality, there was no error in sustaining an objection to the further question whether from the understanding of the witness of the defendant and his study of him, etc., the latter was a fit subject for the excessive punishment of the death penalty or long continued confinement. This was a matter for the jury.

**5.—Same—Evidence—Medical Expert—Bill of Exceptions—Hypothetical Question.**

Upon trial of murder there was no error in permitting the State to ask a medical expert a hypothetical question based upon the facts in the case, and overruling an objection on the ground that the question did not cover all the material facts in the case as adduced by the witnesses but was only fragmentary and adverse to the defendant; besides the bill of exceptions did not give the answer to the question.

**6.—Same—Evidence—Expert Opinion—Hypothetical Question.**

Upon trial of murder there was no error in permitting the State on cross-examination to ask an expert witness the hypothetical question, with refer-

ence to the defendant's memory, that the same would be good if he remembered enough about a transaction to testify all about it months after the killing, it not appearing in the bill of exceptions that there was not any evidence during the trial that the defendant had so testified on a former trial.

### 7.—Same—Charge of Court—Delirium Tremens—Temporary and Permanent Insanity.

The law draws a distinction between temporary and permanent insanity, the former being produced by the recent voluntary use of intoxicants and the latter being the result of long continued use of intoxicants, and where the facts did not show a fixed or settled insanity from long continued use of intoxicants, there was no error in the court's failure to charge on the question of delirium tremens; the court having submitted a proper charge on the issue of insanity.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Carlos Bee* and *C. C. Todd,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, his punishment being assessed at fifteen years imprisonment in the penitentiary.

This is the second appeal. The first appeal will be found reported in 56 Texas Crim. Rep., 502, 120 S. W. Rep., 894. In the former appeal the judgment was for life imprisonment. A sufficient statement of the evidence in the case as far as the questions involved in this case are concerned will be found in the former opinion.

1. Several bills of exceptions were reserved to the action of the court overruling challenges for cause to jurors named in the bills of exception. We deem it unnecessary to discuss the merits of the bills for the reason that it is not shown by the bills that appellant exhausted his peremptory challenges and thereafter was required or forced to accept a juror who was subject to disqualification or challenge for cause. So far as the bills are concerned, the appellant did not have forced upon him an objectionable juror. It may be stated in this connection that the jurors set out in the bills were challenged peremptorily and did not sit in the case.

2. Miller, a witness for the State, testified that on the evening prior to the homicide appellant was drinking heavily, and the last time he saw him on the night prior to the homicide the following day he was on the point of having delirium tremens, and being subsequently examined by the State, witness was not able to define delirium tremens, and the State thereupon asked that the above statement of the witness be stricken out, and it was so ordered by the court. Appellant contended that the condition of delirium tremens

is one of common knowledge, similar to that as to whether a man is drunk or sick, and expert knowledge is not necessary upon the subject. The court signs the bill with the following qualification: "That the witness on cross-examination by the State admitted that he did not know what delirium tremens was, and that the State moved to exclude his declaration upon cross-examination that the defendant was on the point of delirium tremens, because it was the opinion of the witness not based upon the knowledge of the matter concerning which he was testifying, and the court thereupon struck out the opinion of the witness as to the defendant being upon the point of delirium tremens." As this matter is explained by the court, we are of opinion there is no error. The statement on the part of the witness as to his ignorance of the matter is, we think, sufficient to justify the court in the ruling made.

3. Another bill recites that while the same witness was upon redirect examination, the following question was asked him: "While Mr. Duke was showing you this pistol and shotgun, tell the jury whether or not he was excited or cool, calm or deliberate." Appellant objected to this because it called for the conclusion of the witness. This was overruled and the witness answered, "He seemed to be very quiet; he was sober." This bill is rather indefinite in that it does not show at what time appellant was showing his pistol and shotgun to the witness, or what connection it had or may have had with the fact of the killing. As a usual rule this character of testimony is admissible as a shorthand rendering of the facts. Whether a man is drunk or sober, or quiet or boisterous, or matters of that kind, can be stated, not so much as a conclusion, but as a fact.

4. Another bill of exceptions recites that Dr. Moody had qualified as an expert on mental diseases; that he had examined appellant, and having had presented to him a hypothetical question based upon the testimony in the case and having answered that the defendant though, in his opinion, legally sane, was of a very low order of mentality, was asked by the defendant the following question: "From your understanding of this man and your study of him and his history as outlined to you, do you consider the defendant a fit subject for excessive punishment as the death penalty, or long continued confinement?" Objection by the State was sustained by the court. Appellant excepted for the reason that the witness was an expert upon mental diseases, and that while the jury are the exclusive judges of the credibility of the witnesses and the weight to be given to the testimony, and in their deliberation weigh and consider testimony in their own way, the testimony of a doctor who has spent fourteen years in the constant study of mental diseases, who is associated with the insane daily, who knows the effect of pain and suffering upon the mind, who knows the capacity of the mind to form the cool, calm and deliberate design, would be important in assisting the jury in arriving at their determination as to whether they would be justified, under

the circumstances and conditions of the defendant, in inflicting upon a person so mentally constituted as was the defendant a long and continued confinement. There are several bills of exception embodying practically the same question from different experts who were placed upon the stand, among whom, in addition to Dr. Moody, were Drs. Berry and Nichols. We are of opinion the court's action is correct. The conclusion to be reached in matters of this sort is for the jury. It is not the province of an expert to give his opinion as to how a party accused of crime shall be punished in case of a conviction. He may say that the party is sane or insane, but it has not been held, nor do we believe it could be rightfully held, that the expert could express his opinion as to the amount of punishment that the jury should assess in case they found that the accused was not insane. The jury may take into consideration the low order of intellect of a party they are trying in passing upon the amount of punishment where his punishment is graded from a minimum to a maximum. The question at issue in cases of this character is always the sanity of the party, and does not include the expert opinion of a witness that a low order of intellect should commend itself to the jury in assessing the punishment. This is a matter that the Legislature, if they saw proper to do, may regulate, but it is not within the province of witnesses to do so or even to express their opinion about it. It would not be the subject of expert testimony in any event.

5. Another bill recites that while Dr. Berry was upon the stand testifying as an expert upon hypothetical questions based upon the facts of the case, he was asked quite a lengthy question stated in the nature of a hypothesis. It is unnecessary to repeat these facts. They are set out, however, in the bill of exceptions. This question was asked by the State. Appellant objected because it did not cover the material facts of the case as adduced by the witnesses, but was only a fragmentary statement, selecting only that portion of the testimony adverse to the contention of appellant, and was not a question based upon a full and complete review of all the testimony, and was, therefore, prejudicial to the interests of the defendant. These objections were overruled. The answer is not given, and what the answer was we are not informed. This would dispose of the bill. The testimony, however, may have been favorable to appellant and it may not have been, but be that as it may, whatever the answer was, if any, the question was a legitimate one under the ruling of Burt v. State, 38 Texas Crim. Rep., 397. The rule was there laid down after a very careful review of this character of question, and after an able oral argument and brief, that either side can put a hypothetical question based upon the facts in the case, that is, such facts as are proved and the party putting the question deemed proper to collate in the hypothetical question. If the opposite side is not satisfied with the question as put, that side can amplify the question or put the hypothetical question under the facts as he sees proper. We do not believe that

it would be of any service to review this question further than was
done in the Burt case, supra. For a discussion of the matter here in-
volved see the opinions in that case both on original hearing and on
motion for rehearing.

6. There is another bill which recites that Dr. Nichols, superin-
tendent of the Southwestern Insane Asylum of San Antonio, testi-
fied as a witness for the defendant, and qualified as an expert upon
mental diseases. Among other things, he was asked by appellant the
following question:

"From your experience and treatment of these different disorders, is
it possible for a man to become so drunk as to be, under the statement
I made to you, and as you said awhile ago, irresponsible, and remem-
ber nothing of the act committed, and yet in that interval preceding
be able to transact little matters of business, such as making change
and things of that kind?" and in reply gave the following answer:

"I will state to the jury we very frequently have conditions of that
kind where people appear to be normal and all right and transact
business or do things and not have any remembrance of it afterwards."
Thereupon the State asked this question:

"Where a party remembers enough about the transaction to testify
all about it months after the killing," and thereupon the following
colloquy occurred between the court, counsel for the State and counsel
for the defendant:

"Mr. Bee: I except to the question because it has reference to the
failure of the defendant to testify, and refers to another matter. I
make further objection that it is not predicated upon testimony before
the court at this time and upon the record at this time.

"Mr. Davies: I am asking a hypothetical question now, based upon
the proposition. I believe he has asked the question; now this ques-
tion is pertinent to the very inquiry he has made; if he can do these
little formal acts and forget all about what he did at the time of the
transaction. I am cross-examining the witness, and I asked the fur-
ther question which your honor heard, whether or not if he did such
things and was able to remember, whether or not then, under those
circumstances, he would be temporarily insane.

"Mr. Bee: I further except to it because there is no evidence be-
fore the court. The hypothetical question is based upon a false prem-
ise in this case, because there is no testimony before this court that
the defendant in this case remembered any of the acts committed.

"The court: Answer the question.

"Mr. Bee: I further object because the question previously pro-
pounded by counsel is prejudicial to the rights of this defendant as
will be fully set out in the bill of exceptions.

"Q. Now, I will ask you this question: Whether or not a party
who has passed through what I have related to you before in my hypo-
thetical question, in addition thereto, several months afterwards was
able to go upon the witness stand and detail what occurred at the

time of the homicide, from his standpoint, whether or not the man of that kind could be under the influence of liquor to such an extent as to be temporarily insane and irresponsible, at the time of the commission of the offense?

"Mr. Bee: I desire to urge two objections: First, I desire to object to the question because it has reference to a matter that is not before this court. There is no evidence before this court on that subject. Second, because it refers to a matter that is prejudicial to the rights of this defendant in this case, as outlined."

These objections were all overruled. The question was asked, and the witness answered that under the statement made by counsel for the State he would say that the memory of the defendant was all right. Appellant objected because the questions were improper in that they referred to the testimony of the defendant on a previous trial and are not predicated upon any testimony before the court at the time, or upon the record in the case at the time, and because the hypothetical question propounded was based upon a false premise so far as this case was concerned, because there was no testimony before the court in this case that the defendant remembered any of the acts committed; and further, because it refers to the failure of the defendant to testify and was a reference to matters prejudicial to the rights of the defendant in the case on another trial. As the bill presents these matters we are of opinion that the ruling of the court was not erroneous. If appellant testified on the former trial, and that fact was developed before the jury, and it was shown that he went into details in regard to the killing and attendant circumstances, these matters could be embraced in the hypothetical question, that is, if he testified to all the facts and circumstances occurring at the homicide on the former trial, such facts could be included in the question. It was not erroneous to embrace these matters in a hypothetical question in the manner presented by this bill of exceptions. This is based upon the view that the bill fails to show the evidence of appellant on former trial had not been introduced at the time the hypothetical question was put to the doctor. The statement in the bill of exceptions as a ground of objection that he had not so testified is not the statement of the fact that the ground of objection is true. The court approving a bill of this character does not certify to the correctness of the ground of objection; his certificate to the bill is to the effect that the matters occurred therein as stated and that the ground of objections were those urged by the party taking the exception. He does not certify that the grounds of objection correctly state the facts. If as a matter of fact appellant's evidence on a former trial was not before the jury so as to form part of the hypothetical question, this matter should have been stated as a matter of fact in the bill and not as a ground of objection.

7. Without setting out the nature of the requested instructions which were refused, it was suggested in those instructions that the

court should have charged the jury with reference to the question of delirium tremens as a phase of insanity. We are of opinion the record does not show such evidence as required the court to give this charge. During the trial it was sought to prove that appellant's mind was affected by the use of intoxicants, and it is shown that on the evening and night prior to the homicide the following day that appellant was very much intoxicated, but on the morning of the homicide while he had taken one or two drinks of whisky and a drink of beer, yet the evidence does not show that he was suffering from delirium tremens. It is fully doubtful if he was drunk. The court submitted the theory of voluntary drunkenness, but did not submit the theory of settled insanity from the long and continued use of intoxicants. The law draws a distinction which the decisions have clearly recognized between temporary insanity from the recent voluntary use of intoxicants, drunkenness produced from that source, and the settled insanity which is the result of long continued use of such intoxicants. The facts in this case do not show a fixed or settled insanity from long continued use of intoxicants. Had that been an issue in the case the court should have submitted it. However, the court does give a charge on insanity in the usual form, and not criticised, which instructs the jury that if appellant was insane at the time of the homicide they should acquit him on that ground of any unlawful killing. The distinction between temporary insanity produced by recent voluntary use of intoxicants, and that which follows long, continued use of such whisky to the extent of unbalancing the mind, is discussed in Evers v. State, 31 Texas Crim. Rep., 318. Judge Simpkins, delivering the opinion of the court in that case, uses this language:

"There are two kinds of insanity produced by alcoholism: First, delirium tremens, caused by the breaking down of the person's system by long continued or habitual drunkenness, and brought on by abstinence from drink. This is what is called 'settled insanity,' to distinguish it from 'temporary insanity' or drunkenness, directly resulting from drink. 'Settled insanity,' from the earliest times, has been held to be a complete defense to crime. Lord Hale says: 'If by means of drunkenness an habitual or fixed madness be caused, though contracted by the will of the party, it will excuse crime.' P. C., pt. 1, c. 4. In United States v. Drew, 5 Mason, 28, decided in 1828, Story, Judge, says: 'Insanity, whose remote cause is habitual drunkenness, is an excuse for crime committed by the party while so insane, but not intoxicated, or under the influence of whisky. Such insanity has always been deemed a sufficient excuse for any crime done under its influence.' United States v. McGlue, 1 Curt., 1; Maconnehey v. The State, 5 Ohio St., 77; Carter v. The State, 12 Texas, 500; Erwin v. State, 10 Texas Crim. App., 700. Second, the other kind of insanity is that condition of the mind directly produced by the use of ardent spirits; and where a fit of intoxication is carried to such a

degree that the person becomes incapable of knowing the act he is doing is wrong and criminal, as above stated, he is in that condition referred to by the statute as being 'temporarily insane,' as stated by this court in the Kelley case, ante, p. 216.  There is no difference between the two kinds of insanity so far as the mental status is concerned, but they differ widely in their causes and results.  The first is from drinking as a remote result; the second from drinking as a direct result.  The first is an involuntary result, from which all shrink alike; the second is voluntarily sought after.  In the first there is no criminal responsibility, but in the second responsibility never ceases.

"There is evidence only of temporary insanity in the record, and the court erred in not explaining temporary insanity to the jury, and also instructing them, that if they believed that defendant was temporarily insane at the time he formed the intent to kill deceased, and the same was carried into execution while defendant was so insane, they should take such insanity into consideration, both in determining the degree and in reducing the penalty."

As before stated, we fail to find evidence that authorized the court to charge the issue of settled insanity arising from excessive alcoholism and abstinence from such drink, but whether or not delirium tremens would or not be produced be reason of abstinence from long continued drinking, we are of opinion that the evidence here does not suggest delirium tremens or settled insanity.  The experts describe the case more accurately in accordance with the facts as we understand it in their statements to the effect that appellant had a very low order of mentality.  They had stated under certain hypothetical questions that he would be insane, but under others that he would be sane.  The court, we think, sufficiently gave the law in charging the general issue of insanity, and the law applicable thereto.  The fact that appellant was very much intoxicated on the night before the homicide, and drinking some on the morning of the homicide, does not show delirium tremens or settled insanity.  In fact, some of the witnesses who testified about the matter rather exclude the idea of his being drunk.  It is unnecessary to go into a detailed statement of their testimony in this respect.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

[Rehearing denied March 1, 1911.—Reporter.]