could not read Spanish, being a circumstance tending to show defendant's purpose and that of his company and comrades.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 372, 373; Dec. Dig. ☞172.]

2. CRIMINAL LAW ☞1091(9) — APPEAL — INSTRUCTIONS—EXCEPTIONS—SUFFICIENCY.

Bills of exceptions to the refusal to give special charges, merely stating that upon trial defendant asked such a charge, quoting it, and that the court refused to give it, to which he excepted, and asked that his bill be approved, which was done by the signature of the judge, were insufficient as failing to show that the requested charges were presented to the court before its charge was read to the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2818, 2943; Dec. Dig. ☞ 1091(9).]

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Charles Cline was convicted of murder, and he appeals. Affirmed.

Haltom & Haltom, of San Antonio, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. This is the second appeal in this case. The first is reported in 178 S. W. 520. The same punishment was assessed this time as was on the first trial. This is a companion case to that of Serrato and Others v. State, reported in 74 Tex. Cr. R. 413, 171 S. W. beginning at page 1133, and several other cases reported in that volume, and some other cases decided and reported in subsequent volumes. This trial was in accordance with the law as laid down in the trials of the other companion cases where applicable. None of the questions are raised on this trial upon which the former conviction was reversed. This trial was in accordance with the opinion therein rendered where applicable to this trial.

Appellant contends on this, as he did on the former, appeal, that the holding of the court as to the law of principals, conspiracy, etc., as held in companion cases and in this, is incorrect. We have thoroughly considered this question in all these cases, and we have no occasion to change our views. In fact, we are more confirmed each time of the correctness of our views. It is wholly unnecessary to again discuss these questions.

[1] On the trial of this cause, as in several of the others, the court admitted in evidence what is called the "Manifesto," which is fully copied in the opinion in the Martinez Case, 171 S. W. 1154, over appellant's objections. In our opinion, said document was admissible notwithstanding he testified in this case he knew nothing about it, had never seen nor read it, and could not read Spanish, it being in Spanish. That document, like all the other war munitions and the several articles found with the company of which appellant was a member, was admissible as a circumstance, together with all the others and the positive testimony, as tending to show the object and purpose of appellant and his company and comrades. This holding is in accordance with our decision on this question in all these companion cases. There is no necessity of discussing the question.

[2] Appellant has several bills of exceptions to the refusal of the court to give several special charges requested by him. There is also in the record what is stated to be objections to the court's charge. It is in no way authenticated as having been presented to, seen by, or acted upon by, the trial judge. Not a single one of his bills or requested charges show that they were presented to the court at such a time and under such circumstances as required by our present statute and the many and uniform decisions of this court thereunder since its enactment. In each of his bills to the refusal of the court to give his special charge he merely states that upon trial of the cause, he asked such charge, quoting it, and then states that the court refused to give it, to which he excepted, and he asked that his bill be approved, which was done by the signature of the judge thereto. See Ross v. State, 170 S. W. 305, and a great many cases decided by this court since then; also Ryan v. State, 64 Tex. Cr. R. 637, 142 S. W. 878; Byrd v. State, 69 Tex. Cr. R. 35, 151 S. W. 1068. A great many cases could be cited to the same effect. The decisions are uniform on this subject.

However, we will say that we have examined each of appellant's specially requested charges which were refused, and, in our opinion, the court committed no reversible error in refusing to give either of them.

Appellant's able attorneys on both appeals in this case in oral arguments and by brief have forcibly presented his contentions. We have thoroughly considered the whole matter. We see no necessity of reviewing and discussing the authorities nor in discussing the various questions raised herein. They have so many times in these companion cases been fully discussed and the authorities cited and reviewed there is no necessity of doing so again.

In our opinion, no reversible error is presented in this case, and the judgment will therefore be affirmed.

───────

MASON v. STATE. (No. 3969.)

(Court of Criminal Appeals of Texas. March 1, 1916.)

1. CRIMINAL LAW ☞448(11)—HOMICIDE ☞ 190(1)—THREATS—DEMEANOR—EVIDENCE.

On a murder trial, where the defense was self-defense, a witness testified that deceased told her he was mad at accused, wanted to kill him, and was going to get rid of him. She was then asked whether deceased was mad at the time he made such remarks, and answered that he was. *Held* that such evidence was not incompetent as a mere opinion, but was admissi-

ble since the statement made by deceased was a threat, and his demeanor at the time of making it, showing whether the threat was jocular or serious, was important as bearing on the issue of who started the difficulty which resulted in the homicide.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1036, 1041; Dec. Dig. 448(11); Homicide, Cent. Dig. § 399; Dec. Dig. 190(1).]

2. CRIMINAL LAW 448—THREATENING CONDUCT—IMPRESSION MADE ON WITNESS.

Where the defense was self-defense, and there was an issue as to who started the difficulty resulting in the homicide upon accused, approaching deceased for the alleged purpose of adjusting their difficulty, it was proper to allow a witness who saw the affray to testify that when deceased reached down and picked up a rock and drew back his hand to throw, such conduct made the impression on the witness' mind that deceased was going to immediately attack accused and strike him with the rock, such impression being an original impression of the witness from a view of the occurrence and a part of the res gestæ.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1035–1039, 1041–1043, 1045, 1048–1051; Dec. Dig. 448.]

3. HOMICIDE 300(5)—PROVOKING ASSAULT —DEFECTIVE CHARGE.

Where the defense was self-defense, under an alleged attack by deceased when approached by accused for the purpose of settling a difficulty, a charge on the intent and conduct of accused in approaching deceased, which told the jury that if accused's acts, or words, or both taken together, were reasonably "calculated" to provoke, and did provoke, deceased to make an attack on defendant, defendant could not justify the homicide on the ground of self-defense, was defective, since defendant must do something or utter words which actually provoke the difficulty; it not being sufficient that such acts or words were calculated to provoke.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 619; Dec. Dig. 300(5).]

4. HOMICIDE 300(12)—CHARGE—BURDEN— REASONABLE DOUBT.

In a prosecution for homicide, the defense was self-defense against an attack upon accused by deceased when approached by defendant for the purpose of adjusting a difficulty. The court charged that if: (1) The defendant did not go to deceased with the intent of provoking a difficulty; or if (2) he did so, he did not, upon reaching deceased, use words or do acts with the intent of provoking a difficulty with the apparent intent of killing deceased if he resisted; or (3) if defendant did start out with the intent of seeking deceased, and used words or committed acts calculated to provoke an assault by deceased, but did not use such words or commit such acts with the intent of provoking an attack by deceased for the purpose of killing him; and, if the jury believed either one or all of such propositions, they should find for defendant on the issue of provoking a difficulty. Held, that such charge was defective in apparently throwing the burden of proof on defendant by requiring the jury to affirmatively find that defendant did not approach deceased with the intent of provoking the difficulty; whereas a reasonable doubt as to defendant's purpose in approaching deceased entitled him to acquittal.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 627, 630; Dec. Dig. 300(12).]

5. HOMICIDE 307(2)—CHARGE—FAILURE TO STATE OFFENSE.

Such charge was further defective in failing to inform the jury of what appellant would be guilty, or what should be the verdict in case the jury found for him on the issue of provoking a difficulty; manslaughter and murder being both charged.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 639; Dec. Dig. 307(2).]

6. HOMICIDE 300(14)—CHARGE — RIGHT TO ARMS—SELF-DEFENSE.

It being in evidence that accused was armed when he approached deceased, and there being an issue whether he had armed himself expressly for the purpose of approaching deceased to provoke a difficulty, such charge was further defective in failing to tell the jury that deceased had the right to self-defense upon an assault by accused when accosting him for the purpose of settling the difficulty, though the court correctly charged that defendant had the right to arm himself before seeking deceased if he believed himself to be in danger of death or injury from him.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 629; Dec. Dig. 300(14).]

7. HOMICIDE 188(5)—DECEASED'S CHARACTER—EVIDENCE.

It was error to exclude testimony that witness considered deceased a fighting dangerous man and a man of high temper, since defendant was not restricted to his statutory right to prove deceased's general reputation, but might prove that deceased was dangerous by any testimony which showed that fact, the question being not so much one of reputation as of fact which can be proved, either by reputation or by knowledge of the facts independent of reputation.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 395; Dec. Dig. 188(5).]

8. HOMICIDE 188(5)—DECEASED'S REPUTATION—EVIDENCE—COMPETENCY.

Where a witness was asked if she knew whether deceased was a fighting man and a man of high temper, to which she answered, "Yes, we considered him so," such testimony was competent as evidence of deceased's reputation under the statute, where all the people in the vicinity seemed to have known all the parties, and knew the standing and reputation of both accused and deceased and the circumstances and incidents that occurred culminating in the homicide.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 395; Dec. Dig. 188(5).]

Prendergast, P. J., dissenting.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Will Mason was convicted of murder, and appeals. Reversed.

J. B. Haynes, of Cleburne, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of murder. The jury assessed his punishment at six years' confinement in the penitentiary.

The record, so far as the statement of facts is concerned, is not materially different from what it was on the former appeal as reported in 72 Tex. Cr. R. 501, 163 S. W. 66.

[1] By bill of exceptions No. 14 it is shown that while Mrs. Crook was testifying in behalf of the defendant, and after she had testified, in substance, that Oscar Shelton, the deceased, came to her house one morn-

ing about three weeks before the killing, and said to her, in substance:

"Mrs. Crook, I am mad, I am mad at Bill Mason. I get so mad I want to kill him; and that's not all; I am going to run him out of the neighborhood. I am going to get rid of him. I can't get along with him and never could"

—defendant's counsel at this time asked the witness the following question:

"At the time Oscar Shelton, deceased, was talking to you, and said that he was mad at Bill Mason, I will ask you whether or not he was mad, if you know?"

She would have answered:

"Yes; Oscar Shelton at the time was very mad."

This is claimed to be admissible and material testimony for the defendant, and the knowledge that the witness had as to whether or not the deceased was or was not mad was such knowledge that the witness could give by answering yes or no, and that it was not an opinion of the witness, but was such a fact as could be shown. The state objected because it was the opinion of the witness, and the court sustained the objection, excluding the testimony. The court qualifies this bill as follows: "Defendant was never told of this conversation." It would be immaterial whether defendant was told about the matter or not. It was a threat, and, if uncommunicated, it would tend to solve the question as to who began the difficulty, and this was a mooted question on the trial. Under the defendant's theory the deceased began the second difficulty, and all the testimony shows that he began the first difficulty, which occurred 15 or 20 minutes prior to the second difficulty which ended in the homicide. This testimony was clearly admissible. It is true, the deceased said to Mrs. Crook that he was mad and very mad, and made threats. We hardly think that this was sufficient ground, and the court does not put it upon that ground, nor did the state put it upon that ground. The state claimed it was an opinion, and the court says defendant was never told of it. The condition of the mind of the deceased at the time he made the threats was of grave import. If it was jocular, not serious, it would amount to a great deal less on its weight than if he was serious, determined, and mad and outraged with the defendant at the time he made the threats. This character of testimony has always been held admissible. It is not an opinion; it is the statement more of a fact than a conclusion. It is a sort of shorthand rendering of the fact. The facial expression, tone of the voice, and many other things of that sort in connection with statement and manner of the deceased at the time he made the statement would not be well conveyed to the minds of the jury by the witness. The fact that a man might be angry or in a good humor; that he is jocular and laughing, or serious in his statement— are matters that cannot well be conveyed to the minds of the jury. This is exemplified in many of the decisions, and in many ways.

We hardly deem it necessary at this late date to cite authorities in support of this proposition. One of the late cases is to be found reported in Duke v. State, 61 Tex. Cr. R. 441, 134 S. W. 705. This was important, it seems, under the facts of this case. The evidence shows that deceased had, on different occasions, threatened to kill or run appellant out of the country, and up to within a very short time of the day of the homicide these threats had been made. On the morning of the trouble the parties were picking cotton, the deceased coming in later than appellant, and the facts show he picked rapidly and caught up with appellant, who was picking cotton ahead of him, and as soon as he caught up with him he took off his cotton sack and went to where appellant was and raised trouble with him; that he had a rock in his hand, and grabbed appellant by his shirt collar and tore his shirt. Appellant also caught deceased by the collar. He also had a rock in his hand. They were separated by one of the witnesses, who testified, and in fact this seems not to have been a controverted fact. Appellant went away, he said, to have deceased arrested, and, after going to the house where he was living, changed his mind, and said he would go back and talk the matter over and see if they could not adjust the trouble. He seemed to be afraid of the deceased. The state, however, met this by showing by a witness that appellant, when he started away, said he would come back and have it out with the deceased. There is also a controversy as to why appellant went to the house. The state's contention is, which they introduced evidence to sustain, that he went to the house after his pistol. Appellant's testimony along this line was that he had his pistol with him in his coat, which was on a cultivator; that he put on his coat and went to the house. There is also evidence pro and con as to what occurred when appellant returned. His side of it would make the deceased again the aggressor. The state's theory of it was that appellant came back and renewed the difficulty. Under all these circumstances we think this testimony was clearly admissible.

[2] While Albert Mason was testifying for the defendant he stated, among other things, that he was in the field picking cotton where the shooting of deceased by appellant occurred; that after the first difficulty in the field between defendant and deceased, defendant went off and afterwards returned and walked up pretty close to deceased and said something; that deceased pulled off his sack and stooped down like he was picking up something, and after he got up he had a rock in his hand, which he drew back, and appellant shot. At this juncture defendant's counsel asked the witness the following question:

"At the time Oscar Shelton had his hand drawn back with a rock in his hand, as you have just stated, and while Will Mason was standing near him, did it make any impression on your mind, and, if so, what was that impression?"

Witness would have answered:

"Yes; it did make an impression on my mind, and that impression was that Oscar Shelton was going to immediately attack Will Mason with the rock, and that he was going to immediately strike him with the rock."

This was offered as a part of the res gestæ, and because it was an original impression of the witness, viewing the facts as he saw them at the time of the occurrence, and for which no evidence could be well substituted, and that it was a part of the transaction, illustrating the effect likely to be produced by the conduct and acts of the deceased upon the mind of the defendant at the time of the shooting. The state objected because immaterial, irrelevant, leading, suggestive, and calling for the conclusion of the witness, which was sustained by the court. The court signs this bill by stating that this witness was some distance away, and his statement would be simply an opinion when the jury had all the facts and were in as good a position to form an opinion as the witness. This question came before us in the case of Latham v. State, 172 S. W. 797, and was fully reviewed in an opinion on rehearing by Judge Harper. That case fully sustains the position of appellant. The court was in error. It is unnecessary to review the Latham Case, or the authorities cited. It announces the correct rule.

These are the two main propositions stressed by appellant in his brief. He also urges that the charge is not in accord with the law nor with the rulings of this court on former appeal. Looking to another trial, and without reviewing seriatim these questions, it may be advisable to call the court's attention to the language employed in the charges. The charge on provoking a difficulty, to say the least of it, is very inartistically drawn. In this connection the court charged the jury, in connection with self-defense, that:

"If you believe beyond a reasonable doubt that the defendant, after he and deceased were separated in the first difficulty in the field, left where the deceased was and afterwards returned to the deceased armed with a pistol and went to where the deceased was picking cotton, and by his acts or words, or by both words and acts, made with the intent and purpose of provoking a difficulty with the deceased, and with the apparent intention of killing the deceased or of inflicting upon him serious bodily injury, and that such acts or words or both together, if any there were, were reasonably calculated to provoke the deceased to make an attack on the defendant, or to cause the deceased to attempt or to threaten to do so; and if the same was so used by defendant or made with such apparent intent, and if you find that under such provocation, if any, the deceased made a demonstration which reasonably indicated to the defendant that he was then in danger of death or of such serious bodily injury at the hands of the deceased; or if you believe that said acts or words, or both taken together, were reasonably calculated to provoke, and did provoke, the deceased to make an attack on the defendant—then you are instructed that the defendant could not justify the homicide on the ground of self-defense; and if he then shot and killed the deceased, under such circumstances, with malice aforethought, he would be guilty of murder."

[3, 4] The latter clause of the charge is in the alternative as to what had previously been given by the court. In order to provoke a difficulty defendant must do something, or utter words which do provoke the difficulty. If defendant provoked the deceased to make an attack on him in order that he might have an opportunity of killing him, the homicide would or could be murder; but if less than intent to kill, it would be manslaughter in case of a killing. It is not sufficient that it was calculated to provoke the difficulty. It must provoke it. But that is referred to more to call attention to what follows in the court's charge. In this connection he further charged on this issue:

"You are further instructed: (1) That if you believe that the defendant did not go to the deceased in the field with the intent and purpose of provoking a difficulty with the deceased; or (2) if he did do so, if when he reached the deceased the defendant did not then use any words or commit any acts with the intent and purpose of provoking a difficulty with the deceased with the apparent intent of killing the deceased if he resisted the same, or of inflicting serious bodily injury upon him; or (3) if you believe from the evidence that the defendant did go to the field with the intent and purpose of seeking the deceased, and after arriving there that he did use words or commit acts that were calculated to provoke the deceased to make an assault upon him, but you further believe that the defendant did not do so with the intent and purpose of provoking the deceased to make an attack on him for the purpose of killing the deceased or of doing him some serious bodily injury—then you are instructed that if you believe either one of the above three propositions, or all of them, you find in favor of the defendant on the issue of provoking a difficulty."

Intent and act must concur. The difficulty must thereby be provoked.

Several objections are urged to this charge. One, that it is on the weight of the evidence; it is negative and resolves the doubt in favor of the state and against the defendant, and places the burden on the defendant, and this is emphasized by reason of the fact that nowhere in this part of the charge, when he quits the alternative, is the jury charged to give appellant the benefit of the reasonable doubt. In some of the decisions it has been held that where a charge of this sort is given, which apparently throws the burden of proof upon the defendant, as this charge does, it was subsequently cured or rendered of no serious damage by reason of the fact that the court would then in that connection charge the jury, "or if you have a reasonable doubt of this proposition, you will acquit," but that is not in this charge. It begins by telling them that if the jury should believe the defendant did not go to the deceased in the field with the intent and purpose of provoking a difficulty with the de-

ceased, etc. They do not have to find affirmatively that he did not. It being sufficient if there was a reasonable doubt as to his purpose—and the testimony brought that issue sharp in this case—the jury should have been told to resolve the reasonable doubt in favor of appellant.

[5, 6] Again, this charge does not inform the jury under the circumstances of what appellant would be guilty, or what should be the verdict of the jury in case they found for him on the issue of provoking a difficulty. Manslaughter was charged in the case as well as murder. Self-defense was in the case, and provoking the difficulty was used by the state to cut off appellant from his theory of self-defense. If appellant went back and provoked the difficulty for the purpose of killing or inflicting serious bodily injury, or if he provoked even for a misdemeanor contact, appellant would be debarred of self-defense, but the court does not tell the jury in this charge what their conclusion should be if they found favorably for defendant on the issue of provoking the difficulty, and this is emphasized by the following charge:

"You are instructed that the defendant had the right to arm himself if he believed that he was in danger of death or serious bodily injury from the deceased, and to approach the deceased with the intention and purpose of adjusting their differences."

That is all there is in the charge with reference to the right of the defendant to arm himself and approach the deceased and demand an explanation, or to ascertain his intent and purpose. As we understand the law, appellant had this right. The evidence is in the case making the issue. Now if he went to see the deceased for the purpose of adjusting the difficulty and settling that trouble amicably, and deceased made the attack on him, he certainly would have the right of self-defense, but the jury was not so told. Nor is the jury anywhere informed of defendant's rights under that phase of this record. This question has been often discussed, and in many cases that might be cited, but we will go no farther back than Shannon v. State, 35 Tex. Cr. R. 2, 28 S. W. 687, 60 Am. St. Rep. 17. If he went back to adjust the difficulty amicably with deceased, and deceased made an attack on him, he would have a right of self-defense. This was an issue in the case, which antagonized sharply and critically the question of provoking a difficulty. The state contended defendant went back and provoked deceased to enter into a difficulty in order that he might kill him or inflict upon him serious bodily injury. The proof shows he did kill him. Appellant's theory was that he went back to adjust matters, and when he reached within a few feet of where deceased was, he threw off his cotton sack and grabbed a rock and threatened to kill appellant, and had it in a striking attitude when he shot. This evidence was offered by the defendant to meet the state's evidence that he had gone off and armed himself with a pistol, and said, before getting his pistol, that he was going to come back and have it out with deceased, and when he returned said to deceased, in substance, "You have been wanting to make trouble all along." Now under those circumstances the issue was sharply drawn as to whether he came back to provoke the difficulty, after arming himself, or whether he had the pistol before he went away and came back, after concluding not to have deceased arrested, to talk the matter over with him and see if they could not adjust the trouble, and when he came deceased was the aggressive party, as he had been in the first difficulty. These were matters of fact, and could not be decided by the court, but must be solved by the jury under appropriate instructions. The state had a right, perhaps, under this testimony to have the charge of provoking the difficulty submitted to the jury. It was so held on the former appeal, but the defendant had the right to meet this issue of provoking a difficulty, as was decided in Shannon v. State, supra, by showing he went there, not for the purpose of killing him, but to adjust their troubles if he could.

This much has been said with reference to the charge, so that upon another trial those matters will not be the subject of criticism. I have not taken up the exceptions seriatim to the charge as presented, but have gone over the matter in a general way. There are quite a number of those exceptions and special charges asked, which were refused.

[7] There is another question, presented by bill of exceptions, it may be well enough to notice. Mrs. Mason, mother of appellant, testified, and was asked if she knew whether Oscar Shelton "was a fighting dangerous man and a man of high temper," to which witness answered, "Yes; we considered him so." After this question had been answered, the county attorney objected, and requested the court to withdraw it from the jury, which the court did. Without going into any detailed statement of the bill and incidental matters, we think this was error. It is true the statute provides in homicide cases, where threats come as a part of the case, the defendant may introduce the general reputation of the deceased as being a violent and dangerous man and one likely to execute threats. This is a statutory rule, and based upon the idea that general reputation would be known in the community and therefore to the defendant, and this by reason of the fact it was general reputation. By this means and under the terms of the statute the defendant may prove the bad reputation in these respects of the deceased. However, this does not preclude the defendant from proving that deceased was a dangerous man by any testimony which showed that fact, and that the

defendant was aware of that fact. This question came for pretty thorough adjudication in Childers v. State, 30 Tex. App. 160, 16 S. W. 903, 28 Am. St. Rep. 899. Without going to the decision, but repeating from the syllabus or headnotes, it is said:

"The character of the deceased as a dangerous and desperate man might have been proved by general reputation, but that such proof might have been made did not deprive the defendant of the right to prove that he had received information of the deceased's character from other sources. It was immaterial from what source he received such information, if it was reasonably sufficient to create, and did create, in his mind the belief that deceased was a dangerous and desperate man. His belief and the reasonableness of it were questions of fact for the jury to pass upon, and he was entitled to have the jury placed in possession of all the facts known to him, and which he claimed influenced him in committing the homicide, to the end that the jury might view the appearances of danger from his standpoint."

This is a very clear, lucid statement of the rule, and so far as we are aware it has been followed in the decisions of this state. It is a correct rule. The question is not one so much of reputation, but of fact, which can be proved by reputation or by knowledge of the facts independent of the reputation on the part of the defendant. Of course, these matters must be brought home to the knowledge of the defendant, and the record in this case shows abundantly that he did know these facts, and that he knew the man practically all his life, and that he was afraid of him. He had threatened to kill him if he did not leave the country, and he left the country two or three times, and returned, and these threats were renewed. See, also, Spencer v. State, 59 Tex. Cr. R. 217, 128 S. W. 118; Brooks v. State, 24 Tex. App. 274, 5 S. W. 852; Johnson v. State, 28 Tex. App. 17, 11 S. W. 667; Walker v. State, 28 Tex. App. 503, 13 S. W. 860.

[8] The answer of this witness as detailed, we think was sufficiently in compliance with the statute, even under the general proposition. She said, yes, she knew it, and that they regarded deceased as a fighting and dangerous man. All the people around there seemed to have known all the parties, and knew the standing and reputation of both, and knew the circumstances and incidents that occurred. Of course, as to the fact that the man was dangerous, and of which appellant had no knowledge, isolated acts might not be provable; but, where he knew his dangerous character from facts and circumstances, he could prove the fact that he was a violent and dangerous man independent of general reputation. This he could prove by general reputation, or if he had knowledge independent of general reputation, he could as well so prove. Upon another trial, if this testimony is offered, we think it should be admitted.

For the errors indicated the judgment is reversed, and the cause remanded.

PRENDERGAST, P. J. (dissenting). The trial judge was clearly right in refusing to permit Albert Mason to testify the impression made on his mind by what he said deceased did when he picked up a rock. Men are neither condemned nor exonerated by the impression made on the mind of another. The decision in the Latham Case to the contrary is not the law. So the court was correct in excluding the testimony of Mrs. Mason as to deceased being a dangerous, etc., man. The cases cited by Judge DAVIDSON do not so hold. They are not in point.

About the only just criticism of the court's charge is in the second paragraph of the eighth subdivision, wherein he submits the converse of the first paragraph in numbers (1), (2), and (3), in not following "if you believe" with "or have a reasonable doubt." It may be that, taking the charge as a whole, this even was supplied.