NEWT POUNDS V. THE STATE.

No. 21493.  Delivered March 12, 1941.
Rehearing Denied May 21, 1941.

The opinion states the case.

*Jimmie Cunningham* and *Tom M. Miller,* both of Graham, for appellant.

*Lloyd W. Davidson,* State's Attorney of Austin, for the State, on submission.

GRAVES, Judge.

Appellant was convicted of an assault with intent to murder without malice, and assessed a term of two years in the penitentiary.

The person charged to have been assaulted by appellant was one G. W. Meeks, a seventy-two year old man. From the facts relied upon by the State we gather that the Meeks family and the Pounds family lived close together in tent houses near the Salt Creek section of the City of Graham, in Young County. That appellant's mother and one of her sons, other than appellant, lived together, and the Meeks family consisted of Mr. Meeks, a mentally defective son, J. C. Meeks, and a daughter, Mary, who lived together near where the Pounds family lived. On the day of the difficulty that resulted in this prosecution, the State's witness, Mary Meeks, testified that she heard her defective brother, J. C. Meeks, holloing, and she looked down near the Salt Creek and saw appellant and his brother slapping J. C. Meeks and beating him. The witness and her father then went down where the trouble was, and her father then asked these men what J. C. Meeks had done, at which time appellant's brother Carroll ran up to the father and grabbed him, and appellant began to beat the old man while the brother was holding the father's hands behind him. Mrs. Pounds, the mother, had a pistol in her hand. The witness Mary ran and got two mesquite clubs and ran back to the scene, and Mrs. Pounds "throwed the gun down on me (Mary) and said she'd blow my g-d- brains out if I hit them a lick." She told Newt (appellant) to hit him with that hammer, and Newt took an ordinary claw hammer out of his pocket and hit G. W. Meeks with it in the temple. The old man fell, and the daughter ran to him and lifted his head up, while J. C. Meeks went after the doctor, and the Pounds retired to their tent. In a few moments appellant returned to the scene of the difficulty after his claw hammer, and Mary said:

"'You have killed papa,' and he says 'I hope to God I have killed him,' and he went around on the other side and kicked papa in the hips and on the side. Papa was lying down at that time. * * * After the defendant kicked my father he wiped the blood off of my father's face and throwed it in my face,—he just flipped the blood in my face. "

The skull of G. W. Meeks was crushed and pieces of bone

were taken out of his head. He was dangerously injured, and the attending physician testified:

"The injuries he had would kill a person; injuries like that, the patient most always would be killed instantly with that kind of a wound. Not over one or two per cent of the people out of a hundred survive that kind of an injury. Any time you have an injury to the head, when you've got a fractured skull the patient doesn't remember what happened, they don't know where they are as a rule for a few hours, and with that kind of injuries they don't know how it occurred. I had Mr. Meeks under my care and observation for seven or eight months. He was in the hospital about ten days or two weeks. I don't think Mr. Meeks is able to give a statement of what happened. I don't think he is a competent witness now to testify as to what happened."

The doctor further testified:

"On or about the 19th day of May, 1939, I had occasion to examine the injuries sustained by George W. Meeks. I don't remember what time it was I examined him; it was at their tent or shack over across the creek when I first examined him. I was called out there to see him. I found an injury to his head, on the left side of his temple, about in this position. It was a round wound about something like that, about as big as a dollar. The injury I found on Mr. Meeks could have been inflicted with a claw hammer or a round blunt instrument. A claw hammer would make the kind of injuries I found on his head. The kind of injuries he had, there was just a round hole driven in his head, in his skull, and the bone was driven down about an inch into his head; I got out three pieces of bone—the edges of the wound, the skull wound; the skull wound was ragged edge; the skull wound was practically a straight wound, just like it was punched out with a punch."

The appellant used his mother and brother as witnesses. It was claimed by them that just before the trouble the defective, J. C. Meeks, passed by their house and began throwing rocks at them and cursing the brother, and threatening to kill him. J. C. Meeks went on home, and soon thereafter he was seen some seventy-five yards away from the Pounds' place near the Salt Creek. Appellant was passing along near there. Meeks had a pocket full of rocks, and appellant and Meeks were talking, at which time G. W. Meeks and Mary began running down

to the creek from their home, and G. W. Meeks began beating appellant and saying he would kill him, and a general melee ensued, but at no time did appellant nor his brother strike anyone. Appellant's mother was not there; she stayed at the house. The witness saw J. C. Meeks hit G. W. Meeks with a rock, and appellant and his brother ran away from the scene. Mr. Meeks had a pistol; the Pounds did not own one. They did not strike anyone at any time, and both the mother and son Carroll denied practically all the incriminating testimony given by Mary Meeks, thus creating a question of fact to be settled by the jury, and which they settled in favor of the State.

Appellant's bill of exceptions No. 1 relates to certain testimony offered by a witness, but nowhere therein is it shown who the witness was. The objection being that the witness had not been qualified as an expert, and therefore could not give his opinion as to whether G. W. Meeks was competent to testify at that time. We apprehend that the witness was doubtless the physician who treated Mr. Meeks for many months after the assault complained of herein. We think he was an expert and had qualified himself as such. However, it has been held that: "A non-expert may testify that a witness is of simple mind and without memory where he is acquainted with the witness and knows of these characteristics as facts." Johnson v. State, 42 Tex. Cr. R. 618, 62 S. W. 756; Key v. State, 161 S. W. 130; Branch's P. C., Sec. 131. This bill is overruled.

Bill of exceptions No. 2 complains of the trial court's failure to allow the witness Minnie Pounds, appellant's mother, to testify that "as viewed from the defendant Newt Pounds' standpoint it would appear that Newt Pounds was in danger of serious bodily injury from George Meeks."

It is to be noted that appellant did not take the witness stand in his own behalf, and was thus attempting to place his self-defense theory before the jury by means of his mother's offered testimony as to how this transaction impressed her, and therefore by analogous reasoning it affected appellant in the same way. According to the testimony of appellant's mother and brother, who claimed to be about seventy-five yards away from the scene of the trouble, appellant did absolutely nothing in this transaction save to be knocked down by Mary Meeks, and then get up and run away from the scene as quickly as possible.

There seems to be a line of decisions beginning with the case of Thomas v. State, 40 Texas, 43; Cochran v. State, 28 Tex. Cr. App. 431, 13 S. W. 651; Robinson v. State, 57 S. W. 811; Scott v. State, 93 S. W. 112; Latham v. State, 172 S. W. 797, that held that a witness not engaged in the controversy could give his version as to the impression made on witness' mind by the acts of the deceased or injured party during the transaction. However, the above cases were considered and virtually overruled in an exhaustive discussion by Judge Lattimore in the Dunne Case, 263 S. W. 608. In that case the witness Keenum was asked to give the impression made on witness' mind as to the acts of the deceased at the time he was killed. After a comprehensive discussion of the above cited line of cases, the Dunne opinion says:

"The State has the same right to opinion testimony as the defense. One who asserts that he shot on appearances of danger, as viewed from his standpoint, might find himself confronted by an array of witnesses who were present at the shooting, and each of whom would then be permitted to swear that he saw the occurrence, and that, in his opinion, the deceased was doing absolutely nothing indicating a purpose to attack or harm the accused. Soon the rule requiring that witnesses state facts would be abrogated, and cases be tried on a constantly broadening rule of conjecture and opinion. While we doubt the soundness of the Latham Case, supra, and the Mason Case, 79 Tex. Cr. R. 169, 183 S. W. 1153, which follow and cite the Latham Case, we have no doubt as to the correctness of the rejection of the offered testimony in the instant case. Campbell v. State, 10 Tex. App. 560; Lumbkin v. State, 12 Tex. App. 341; Drake v. State, 29 Tex. App. 265, 15 S. W. 725; Skaggs v. State, 31 Tex. Cr. R. 563, 21 S. W. 257; Wilson v. State, 37 Tex. Cr. R. 64, 38 S. W. 610; Swann v. State, 92 Tex. Cr. R. 153, 242 S. W. 738."

It seems to us that the above reasoning disposes of this bill, otherwise trials would soon resolve themselves into a contest of conclusions and opinions of bystanders as to whether or not the appellant was apprehensive of an infliction of death or serious bodily injury at the hands of his adversary. The trial might degenerate into a contest of testimony upon the part of the State and its witnesses who were of the opinion that the defendant, as the witnesses viewed his standpoint, was not in such danger, while the defense would counter with its volume of witnesses that their opinion was, as they viewed the

same from accused's standpoint, that he was in danger of life or injury at such time.

In the case of Carlile v. State, 18 S. W. (2d) 165, we held improper the following question to an eye witness of a homicide:

" 'That from the acts, conduct and movements of deceased at the time he was shot by the defendant, he (the eye witness) was impressed by the belief and such was produced in his mind that the deceased was preparing and intending to shoot the defendant at the time the deceased was shot by the defendant.' The court, we think, correctly excluded this evidence. It comes within the rule announced in the case of Dunne v. State, 98 Tex. Cr. R. 7, 263 S. W. 608, and subsequently followed in Hanners v. State, 104 Tex. Cr. R. 442, 284 S. W. 554.

"The opinions and conclusions of bystanders based practically upon all the defensive facts in evidence ought not to be thus placed before the jury. The appellant specially relies upon the case of Latham v. State, 75 Tex. Cr. R. 575, 172 S. W. 797, which was an opinion delivered by this court speaking through Judge Harper. We have heretofore expressed our doubt as to the soundness of this case, and a re-examination of same has confirmed, rather than changed, our original view. The proffered evidence amounted in effect to an expression of opinion by witnesses upon one of the very issues the jury were impaneled to try. There is a distinction between this and other apparently similar cases as pointed out in Dunne's Case, supra."

The point here in issue is still further removed into the realm of opinion testimony in that in this case there is an endeavor to have Mrs. Pounds testify as to what was her opinion relative to the impression made on appellant's mind by G. W. Meeks' actions at the scene of the difficulty, and not as to what impression was made on her mind by Meeks' actions at the time of the trouble. We overrule this bill.

Bill of exceptions No. 3 is ruled by what we have said relative to Bill No. 2, and under the reasoning there found this bill is overruled.

Bill of exception No. 4 merely contains an exception to paragraph three of the court's charge, it being a charge on aggravated assault. We find no reasons assigned for such objection, and we see no reason why such a charge should not have been

pertinent to the facts adduced by the State. The bill is over-ruled.

Bill Nos. 5 and 6 are in the same condition as bill No. 4, and relate to the court's charge, which charge impresses us as having correctly charged the principles of law called for by the pleading and evidence. They are overruled.

Bills Nos. 7, 8, 9 and 10 relate to the trial court's failure to give certain special charges requested by appellant. We have carefully gone over the same in conjunction with the court's charge given in the case, and where same were applicable we think they were covered by the court's main charge.

Bill No. 10 is based upon the trial court's refusal to give a requested charge on the doctrine of self-defense. We have searched the record and confess our inability to find any testimony therein from either the State's or the appellant's witnesses that raise such an issue. The State's testimony shows an attack upon the defective son, J. C. Meeks, by appellant and his brother, and, upon the presence at such scene of G. W. Meeks, an attack upon him by appellant with a hammer. The appellant did not take the stand. His mother and brother testified that he was doing nothing to J. C. Meeks, and G. W. Meeks and daughter came running to the scene of the difficulty and knocked defendant down, and threatened to kill him, and he got up and ran away; that he struck no one, had no hammer, and did not do anything, save get knocked down by G. W. Meeks, and then ran away from the scene. That J. C. Meeks hit his father with a rock and caused the wound testified to by the doctor.

Under these facts we do not see how the trial court was called upon to charge the jury upon appellant's right to strike the father in self-defense when appellant's witnesses said he did not strike him at all. The appellant did not take the witness stand and testify, and we are left in doubt as to whether he would have claimed self-defense or not, but under the circumstances we can only say that this issue, we think, was not raised, and the court was correct in refusing to give such charge.

Bill of exceptions No. 11 complains because the court failed to charge the jury relative to the failure of the defendant to testify in the case. Mr. Branch says in his valuable Penal Code, p. 211, Sec. 377: "The court is not required to charge the jury

as to defendant's failure to testify," citing a long list of cases, and we think this bill is without merit.

We have carefully considered this record and all bills of exceptions. The conflict in the testimony has been settled by the jury against appellant's contention.

It appears from the record, however, that the sentence herein failed to take cognizance of the indeterminate sentence law, and the same is reformed so as to show that appellant is sentenced to serve not less than one nor more than two years in the State penitentiary, and as thus reformed the judgment herein is in all things affirmed.

### ON REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant urges that the issue of self-defense was raised by the evidence. Because the fact that appellant did not testify was mentioned in our original opinion he seems to have concluded that it was our holding that the issue of self-defense could only be raised by appellant's own evidence. Of course, we did not so hold and are not to be understood as holding that appellant's legal rights would be controlled and gauged alone by his own testimony. He was entitled to an affirmative instruction on every defensive issue raised by the evidence no matter from what source it came, or whether it was strong or weak. The insistence that a defensive issue was raised has made it necessary to again review the evidence brought forward. The story told by the witnesses for the State and the one related by appellant's witnesses are so completely inconsistent that both can not be true. Appellant's witnesses rested defense upon the sole proposition that appellant never struck the injured party at all, but that he was accidentally hit with a rock thrown by the injured party's own son at a time when appellant was running away from the scene of the difficulty. Evidently the jury did not believe this story. After a careful re-examination of the statement of facts we think the trial court was not in error in declining to give the requested charge on the issue of self-defense, which was of the most general character, not even naming anyone against whom appellant was supposed to be defending.

The motion for rehearing is overruled.