WILL COLEMAN v. THE STATE.

No. 2982. Decided March 18, 1914.

**Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder and a conviction of murder in the second degree, the evidence did not raise the issue of manslaughter, there was no error in the court's failure to charge thereon. Davidson, Judge, dissenting.

Appeal from the District Court of Freestone. Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*R. M. Edwards* and *Boyd & Bell,* for appellant.—On question of court's failure to charge on manslaughter: McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 id., 536; Pollard v. State, 73 S. W. Rep., 953; Beckham v. State, 69 S. W. Rep., 534; Best v. State, 58 Texas Crim. Rep., 327, 125 S. W. Rep., 909.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Judge.—Appellant was convicted of murder in the second degree, his punishment being assessed at five years confinement in the penitentiary.

The real question at issue on this appeal is the failure of the court to charge the law of manslaughter. The evidence, in substance, is, the deceased, Andrew Brooks, and Minnie Lee Blain had been having illicit relations. This had continued for something like three years. They had gone from Freestone County to Wichita Falls. There they had become separated; either he had left her, or she had left him. She returned to Teague in Freestone County. Subsequently he followed her to this point, reaching there about Wednesday before the killing occurred on Monday. In the meantime Minnie Lee Blain had become an employe of appellant in his restaurant, and seems to have had control of it when appellant was absent. The evidence shows also that rather harmonious relations had grown up between appellant and Minnie Lee Blain. This aroused the ire of deceased, Brooks, and he made numerous and divers threats to kill appellant. These were communicated to appellant. Several of these threats were made during the day preceding the killing at night. It is to be inferred from the testimony that this was all brought about on account of the fact that appellant had been and was then intimate with the woman Blain. On the night of the homicide Mr. Porterfield had come to Teague from Ellis County, bringing a negro named Edwards with him in an automobile. He had come for the purpose of securing cotton pickers. After reaching Teague Mr. Porterfield and his negro Edwards secured the services of the deceased to assist them in securing cotton pickers, and for this purpose had gone down into what is termed "the negro quarters." Appellant, on account of the threats communicated to him, had changed his route of going home, fearing an assassination by deceased and his two brothers. It is shown by the evidence also that Porterfield, Edwards and deceased were standing at or near the depot and appellant passed near them going in the direction of his home. They followed in the same direction appellant was going, until reaching a certain point they turned to the right. Appellant went beyond some woods and turned to the right to his home, stating he was afraid to go through the woods for fear of being killed by the deceased. Reaching his home appellant sent Nolen after Minnie Lee Blain to come to his house, as he says, for the purpose of settling

up with her if she was going to leave him as employe. She had not been about his restaurant for a day or two and had been in company with deceased. Nolen failing to return with the woman, appellant started out in search of them. After going a short distance he came upon a crowd in which the deceased, Edwards, Porterfield and a lot of negroes were assembled, and also where he found Minnie Lee Blain in conversation with the deceased, the deceased having intercepted her or called her from Nolen as he was passing along taking her to appellant's house. Immediately the difficulty occurred. The testimony is widely variant as to the circumstances of the homicide. The State introduced evidence which tended to justify the verdict. The defendant's personal testimony, and which is corroborated to some extent by other testimony, was that as he approached the scene deceased turned upon him with what appellant thought was a pistol. Others said they saw nothing in the hands of deceased; still others said they saw something in his hand but did not know what it was. Appellant was not definite as to what the deceased had in his hand, but he is definite as to the fact that deceased turned upon him, and he expected him to execute his threat and he immediately fired. There was one shot fired, and the evidence is also conflicting as to whether they clinched then or fell upon the ground, or whether the deceased fell after being struck over the head with a pistol by appellant.

Without going into further detail of the immediate transaction, the question is, does this suggest the issue of manslaughter? Taking the State's view of it, it did not. Taking appellant's view of it as he himself testified, the evidence would suggest manslaughter and self-defense. Taking the other testimony to the effect that deceased rushed upon appellant, and may have had something in his hand or may not—the witnesses differ about this matter—taking these circumstances in the light of the previous threats, we are of the opinion that the issue of manslaughter was in the case, and that the jury should have been instructed with regard to this phase of the law. Wherever there is an issue suggested by the testimony favorable to the accused, he is entitled to a presentation of the law on that issue. The strength of the testimony is not a criterion. The criterion is that if the testimony is in the case, then the issue should be submitted to the jury for their consideration. The testimony of the accused is not the sole criterion of the law applicable to favorable issues to him. If his personal testimony suggests an issue this should be submitted. If the State's evidence shows a favorable issue, that issue should be submitted, or if the testimony in its entirety suggests a favorable issue, then the issue should be given in charge. Many cases might be cited in support of this, but it would hardly be deemed necessary at this late date to support this by the opinions of this court as well as the statute. See McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 Texas Crim. App., 536; Pollard v. State, 45 Texas Crim. Rep., 121, 73 S. W. Rep., 953; Beckham v.

State, 69 S. W. Rep., 534; Best v. State, 58 Texas Crim. Rep., 327. Numerous other cases might be cited, but in the light of the testimony and settled law of this State it is unnecessary to cite other cases.

The judgment is reversed and the cause remanded.

PRENDERGAST, PRESIDING JUDGE, HARPER, JUDGE.—We have read the evidence, and without stating it are of the opinion it does not raise manslaughter, and the court did not err in refusing to submit such an issue. The judgment should be affirmed, and it is so ordered.

*Affirmed.*