## Lum Williams v. The State.

No. 7068.   Decided December 20, 1922.

Rehearing denied October 17, 1923.

### 1.—Assault to Murder—Defective Appeal Bond.

Where the appeal bond was only approved by the sheriff instead of by the sheriff and the trial judge, the appeal must be dismissed. However, the defect having been remedied the cause will be heard upon its merits.

### 2.—Same—Bill of Exceptions—Practice in Trial Court.

Where appellant's first three bills of exception were so qualified by the court as to render them wholly nugatory, they will not be considered on appeal.

**3.—Same—Requested Charge—Manslaughter.**

Where, upon trial of assault with intent to murder, the court's charge on manslaughter was a sufficient application of the law to the facts, there was no reversible error in refusing certain requested charges.

**4.—Same—Uncommunicated Threats—Charge of Court.**

In the absence of anything in the main charge restricting the purpose for which evidence of uncommunicated threats was admitted, or for which such evidence might be considered, there was no error in refusing the requested charge, which was manifestly on the weight of the evidence. Following Watt v. State, 90 Texas Crim. Rep., 449.

**5.—Same—Requested Charge—Standpoint of Defendant.**

Where the defendant requested the court to charge the jury that in passing upon the question of insulting conduct on the part of the injured party, if any, the jury should view the matter from the standpoint of the defendant alone regardless of whether such conduct was insulting to the wife of the defendant, the same was correctly refused, under the facts of the instant case. Following Squyres v. State, 242 S. W. Rep., 1024.

**6.—Same—Rehearing—Cross-Examination.**

Where appellant again complained in his motion for rehearing of the court's declination to consider his bill of exceptions No. 4, with reference to the cross-examination of his wife, held, that inasmuch as appellant accepted the bill as qualified there was no reversible error.

**7.—Same—Rehearing—Cross-Examination—Husband and Wife.**

The cross-examination of the wife of the defendant cannot be reviewed on appeal, in the absence of an objection made at the time, and preserved by bill of exceptions. Following Ward v. State, 70 Texas Crim. Rep., 393, and other cases.

Appeal from the District Court of San Augustine. Tried below before the Honorable V. H. Stark.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*D. M. Short & Sons,* for appellant. On question of cross-examination of wife, Johnson v. State, 11 S. W. Rep., 667; Norwood v. State, 192 id., 254; Bennett v. State, 194 id., 255; Eads v. State, 170 id., 147; Hobbs v. State, 112 id., 313; Brock v. State, 71 id., 21; Vickers v. State, 242 id., 1032.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for assault with intent to murder. Punishment, two years in the penitentiary.

Our Assistant Attorney General calls attention to the fact that the appeal bail bond is defective, and moves a dismissal of the appeal. The trial term of court adjourned February 11, 1922. Bond

was not executed until February 13, and is approved only by the sheriff, whereas Article 904, C. C. P. requires bond in such cause to be approved both by the Sheriff and the trial judge. Hanson v. State, (No. 6959, Opinion delivered May 10, 1922; not yet reported).

The appeal must be dismissed.

*Dismissed.*

ON MOTION TO RE-INSTATE APPEAL.

December 20, 1922.

LATTIMORE, JUDGE.—At a former day of this term the appeal in this case was dismissed because of insufficient recognizance. This defect has now been remedied and the case will be considered by us on its merits.

Appellant was convicted in the District Court of San Augustine County of assault to murder, and his punishment fixed at two years in the penitentiary.

There was a negro dance and picnic near a little town in San Augustine County, the festivities continuing during the 18th and 19th of June, 1921. Carroll, the injured party, was a deputy sheriff and attended the dance at the request of another officer named Brown, the latter also being present at the time of the shooting. While the two officers were talking a disturbance arose at the dance platform. Carroll walked around same and in a moment, according to Brown's testimony, two shots were fired apparently from the same gun. Appellant came running around the platform holding a pistol in his hand. Brown stopped him and appellant stated that he had shot John Carroll; that he had two cartridges in his pistol and had fired both of them. Brown asked him if he had killed Carroll and he said he did not know but that he intended to. Carroll testified for the State that when he walked around the dance platform he saw a man coming toward him whom he took to be one Burns, and that he spoke to the man and the man raised a pistol and shot him through the body; that he threw up his arm and the man shot him again and then wheeled and ran. Carroll said he was dazed and blinded and staggered off to one side and did not know who it was at the time. The fact that Carroll did nothing and that appellant shot him twice, being within three or four feet of him at the time, was also substantiated by the testimony of witness James. The clothing of Carroll was set on fire by the pistol, the parties were so close. Appellant cross-examined Carroll at length in an effort to obtain from him some admission of intimacy with or improper conduct toward the wife of appellant. Carrol denied having made any improper proposals to her or having been guilty of any im-

proper conduct with the woman. Appellant's wife was placed on the stand as a witness in his behalf and swore that on two separate occasions Carroll had proposed to her that she leave appellant and go away with him. She seemed confused as to the dates of these two conversations but finally said that one of them was about a month before the shooting and the other was about two months prior thereto. She testified positively that she rejected the proposals of Carroll, and that same were distasteful to her and that she promptly told appellant of both proposals. In this she was corroborated by appellant who took the stand in his own behalf. He said that his wife had borrowed some money from Carroll and told him of that fact. That this money lending occurred about a month before the shooting. He further stated that prior to said money transaction his wife had told him of the two occasions on which Carroll had proposed to her to leave him and go with Carroll. He said this did not make him mad but that he did not like it. The testimony of all the parties further showed the presence of Carroll, of appellant and appellant's wife at said negro picnic on Saturday June 18th. Appellant testified that on Saturday he saw Carroll at said picnic. The parties must have been in close proximity to each other because appellant's wife swore that on that day Carroll winked at her and that at said time her husband was standing by her. The evidence further showed that on Saturday night Carroll and appellant were both back at said picnic and dance, and also on Sunday night, the night of the shooting. Appellant testified that when he went over to the dance on Sunday night he carried his pistol because he wanted it to protect himself from Carroll. In another place he swore that he was not thinking of Carroll when he carried said pistol on said occasion. He repeatedly affirmed that the reason he shot Carroll on the night of the trouble was because Carroll was attempting to draw a pistol, or appellant thought he was. He said when he met him near the dance platform that Carroll threw his hand down and that he thought he was going after a gun.

Appellant has three bills of exception, being Nos. 2, 3 and 4, which were accepted by him with such qualifications appended thereto by the trial court as rendered wholly nugatory any objection therein contained, and said bills will not be discussed by us further than to make the above statement.

Appellant's bill of exceptions No. 7 complains of the refusal of a special charge which reads as follows:

"Gentlemen of the Jury: You are instructed as part of the law in this case if you find from the evidence or have a reasonable doubt whether such is the fact that previous to the time defendant shot Johnnie Carroll, if he did shoot him, that the said Johnnie Carroll had been guilty of insulting conduct towards the wife of the defend-

ant, of which the defendant had been informed and that after being so informed, the defendant met and shot Johnnie Carroll on account of said insulting conduct and that at the time defendant shot Johnnie Carroll, if he did shoot him, he had not been in such close proximity to the said Johnnie Carroll as to enable him to make an assault upon him after having been informed of such insulting conduct and that said defendant shot the said Johnnie Carroll on account of such insulting conduct towards his wife, you will acquit him of assault with intent to murder and convict him of an aggravated assault, unless you find him not guilty under some other instruction of the charge of the court.''

The trial court appended to this bill the statement that the same issue was covered by the main charge. In the main charge the court told the jury that in order to reduce a homicide to manslaughter by reason of insulting words or conduct to a female relative, it must appear that the killing took place at the first meeting after the accused received information of said acts or conduct, and gave to the jury the following:

''You are, therefore, instructed that if the defendant, Lum Williams, was informed and believed that John Carroll used insulting words or insulting conduct towards Mrs. Lum Williams, the wife of the defendant, and so believed shot the said John Carroll when he first met him, after being informed of such insulting words or insulting conduct, it would be adequate cause as that term is herein defined.''

And also further in the charge applying the law to the facts, gave the following:

''And if you find from the evidence beyond a reasonable doubt, that the defendant, Lum Williams, on or about the 19th day of June, A. D. 1921, in the County of San Augustine and State of Texas, did shoot John Carroll with a pistol, and that such act was done under the immediate influence of sudden passion arising from an adequate cause, or that adequate cause existed by reason of insulting words or insulting conduct of John Carroll towards defendant's wife, as these terms have been hereinbefore defined to you, and that such shooting, if any, was not in defense of himself as hereinbefore given you in this charge, you will find the defendant, Lum Williams, guilty of an aggravated assault and assess his punishment at a fine of not less than $25.00 nor more than $1,000.00 or imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment.''

This we think sufficient under the facts of this case to present the law of manslaughter as applicable. Indeed, in the light of the testimony of appellant himself the issue of aggravated assault finds slight support. Not only did he swear repeatedly that he shot Car-

roll wholly in self-defense, but he unequivocally stated that he saw Carroll on Saturday at the picnic on the 18th, this being the day before the shooting and long after the proposals claimed to have been made by Carroll to the wife of appellant, were communicated to him. We would not deem it possible under the facts for appellant to have suffered injury from any refusal of said special charge.

Appellant complains of the refusal of another special charge telling the jury that they might consider uncommunicated threats, if any, in passing upon the meaning of the movement claimed by appellant to have been made by Carroll just before the shooting. In the absence of anything in the main charge restricting the purpose for which evidence of uncommunicated threats was admitted, or for which such evidence might be considered, said charge is manifestly on the weight of the evidence and improper. Watt v. State, 90 Texas Crim. Rep. 449, is cited in this connection. Said case only deals with the admissibility of uncommunicated threats.

Appellant complains of the refusal of a special charge which is as follows:

"You are instructed as part of the law in this case that in passing upon the question of insulting conduct on the part of Johnnie Carroll, if any, you view the matter from the standpoint of the defendant alone, regardless of whether such conduct was insulting to the wife of the defendant."

An instruction such as this can only be proper when it is made to appear that the conduct relied on as being insulting, might be either deemed not insulting *per se* or else be shown in some way to be acceptible to the female relative, and that in such case the jury might be liable to misunderstand the meaning or application of the terms used in the charge. In the instant case there was no evidence to the effect that such was the case. The wife of appllant swore that she rejected the proposals of Carroll and that she did not like them, and that she at once told her husband. Carroll denied the conduct imputed to him by appellant's wife. The authorities cited by appellant in support of this proposition will be found to be cases where the attention or conduct relied upon as insulting was not objectionable to the female relative, but was or might have been to the accused. A view in consonance with that here announced by us will be found in Squyres v. State, 92 Texas Crim. Rep. 160, 242 S. W. Rep., 1024.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

January 24, 1923.

HAWKINS, JUDGE.—We declined to consider appellant's bill of exception number four because in our judgment the qualification appended thereto by the trial court indicated no error committed. The correctness of our opinion in that respect is challenged upon the motion for rehearing. Bill of exception number four is to the refusal of the trial judge to submit a special charge withdrawing from the jury's consideration certain testimony of appellant's wife elicited upon cross-examination. We have again examined the bill and the trial judge's qualification thereto. We remain of the opinion that the explanation of the trial judge,—which we must accept as true it having been accepted by appellant as a part of his bill,— made it unnecessary to give the special charge.

The motion for rehearing will therefore be overruled.

*Overruled.*

ON REHEARING.

December 17, 1923.

MORROW, PRESIDING JUDGE.—Appellant's request for permission to file a second motion for rehearing is refused.

The cross-examination of the wife of the accused cannot be reviewed on appeal in the absence of an objection made at the time and preserved by bill of exceptions. Brock v. State, 71 S. W. Rep. 21, so far as it is to the contrary, was qualified in Ward v. State, 70 Texas Crim. Rep. 393, and in other cases cited in Willingham v. State, 94 Texas Crim. Rep. 596, 252 S. W. Rep. 530.

*Refused.*