## W. G. DUNNE V. THE STATE.

No. 7520.   Decided June 13, 1923.

Rehearing denied June 25, 1924.

1.—Murder—Special Venire—Sheriff's Return—Waiver.

Where defendant was on bail and the record showed that he obtained no copy of the venire list before his case was called for trial, but when he objected going to trial until he had been furnished with said list, the court offered to postpone the trial until the clerk could make such list but defendant's counsel waived claim, there was no reversible error.

2.—Same—Bill of Exceptions—Question and Answer Form.

Where the bills of exception were in question and answer form and no exception to the rule was shown, they will not be considered on appeal; besides, if considered there would be no reversible error.

3.—Same—Evidence—Opinion of Witness.

Where, upon trial of murder, an eye-witness of the defendant testified that just before defendant shot the deceased, the latter said: "Damn you, if you do not want to get along with me, you don't have to," and started across the road toward appellant. The witness was then asked, "What did you think; what impression did this make on your mind?" to which the State raised an objection which was sustained, there was no reversible error.

4.—Same—Evidence—Opinion of Witness—Bill of Exceptions.

In the same bill of exceptions, referring to the movements of deceased before he went to drive the mules out of the field, the witness was also asked, "What did you think when you saw him going across the road to the field " to which objection was raised by the State and sustained, there was no reversible error.

5.—Same—Evidence—Opinion of Witness—Statement of Facts.

Neither of the proposed answers to the above questions were admissible except the part relating to the fact that witness saw an imprint of something under the shirt of deceased, etc., but this court knows of no well considered authority holding that conjectural opinion of future occurrences based on no greater developments of facts than here appears, are admissible. Qualifying:   Lathan v. State, 172 S. W. Rep., 797, and other cases.

6.—Same—Rule Stated—Impression of Witnesses.

Impressions which are primary and for which no substituted proof is conceivable can be put in evidence, whereas an impression which is merely a secondary idea of that of which a more accurate idea is obtainable cannot be received.   Following:   Swann v. State, 242 S. W. Rep., 738, and other cases.

7.—Same—Evidence—Dangerous Character of Deceased.

Where defendant testified that he knew deceased to be a dangerous man and that he believed him to be a man calculated to execute a threat which he had made, etc., there was no error to reject defendant's proffered statement that he honestly thought and believed deceased to be a dangerous man.

**8.—Same—Written Statements—Impeaching Witness.**

The witness Keenum made a written statement on the night of the homicide of the facts, as part of same he stated that he was positive that said statements contained all that deceased said and did, and all that appellant said and did at the time of the fatal difficulty. When a witness herein he testified that deceased cursed appellant and started across the road toward him, held that there was no error to admit in evidence the witness' statement above stated for purposes of impeachment. Following: Campos v. State, 50 Texas Crim. Rep., 292, and other cases.

**9.—Same—Charge of Court—Reasonable Doubt.**

Where defendant objected to the court's charge because it omitted to tell the jury that they must believe beyond a reasonable doubt that the killing was upon malice aforethought, but the court's charge had no such omission, there is no reversible error.

**10.—Same—Manslaughter—Adequate Cause—Charge of Court.**

Where the court's main charge on manslaughter and adequate cause, together with the requested charge was sufficient to bring into review by the jury all the facts and circumstances in evidence in determining the adequacy of the cause, the same was sufficient, and the contention that it was too restrictive is not tenable.

**11.—Same—Manslaughter—Burden of Proof—Charge of Court.**

Where defendant complained that the court's charge on manslaughter placed on him the burden of proving the mitigating facts and circumstances, but the court in another part of his charge told the jury that if they found appellant guilty of some degree of homicide but had a reasonable doubt as to whether the offense was murder or manslaughter, they should give the appellant the benefit of the doubt, etc., there was no reversible error.

**12.—Same—Self-Defense—Charge of Court.**

The complaint on the charge of self-defense and the requested charge offered as corrective thereof, as appears in bills of exception Nos. 27 to 29 have no merit, and there is no reversible error, and the court's charge on self-defense was not too abstract, but, on the contrary, sufficient.

**13.—Same—Retreat—Charge of Court.**

Where the charge of the court instructed the jury that one unlawfully attacked was not bound to retreat in order to avoid the necessity of killing his assailant, the same was sufficient.

**14.—Same—Self-Defense—Real and Apparent Danger—Charge of Court.**

Where the court's charge on self-defense fairly presented the issue of same both against real and apparent danger and is not subject to the criticism that it unduly emphasized self-defense as against real danger only, there is no reversible error.

**15.—Same—Uncommunicated Threat—Charge of Court—Provoking Difficulty.**

Where, upon trial of murder and a conviction of that offense, there was evidence of uncommunicated threats but the trial judge refused to charge that such evidence could be considered by the jury in determining who began the difficulty, there was no reversible error under the facts of the instant case, although the court charged upon the issue of provoking the difficulty. Distinguishing: Carver v. State, 67 Texas Crim. Rep., 116.

16.—Same—Argument of Counsel.

Where the argument of State's counsel referred to certain testimony in the case and used no inflammatory or prejudicial language, there is no reversible error.

17.—Same—Rehearing—Uncommunicated Threats—Charge of Court.

Where the appellant in his motion for rehearing again contends that the refusal of the trial judge to charge the jury upon uncommunicated threats was reversible error, this court after review of the authorities cited by defendant must hold that it would not have been proper for the court to single out particular facts or specific parts of the testimony and charge thereon. To have done so would have been a charge on the weight of the evidence, and the motion for rehearing is overruled.

18.—Same—Uncommunicated Threats—Rule Stated.

Proof of uncommunicated threats becomes a fact to be considered by the jury upon the defensive issue, just as any other fact in the case, and it is not required that the trial judge single out uncommunicated threats and charge on them any more than any other character of evidence receivable to solve the same question. This is the rule applicable in the instant case. Following: Williams v. State, 254 S. W. Rep., 568.

19.—Same— Requested Charge — Provoking Difficulty — Uncommunicated Threats.

Whether this court's holding in the original opinion in the instant case that the refusal of such requested charge was not reversible error, was not based upon a misconception of the facts as it related to a probable provoking of the difficulty by appellant, the court thinks immaterial in view of the foregoing general discussion of the subject, and there is nothing in the opinion which can be construed as a limitation on the purpose for which uncommunicated threats were in evidence.

20.—Same—Threats—Self-Defense—Charge of Court.

Where, upon trial of murder, the court's charge on self-defense only required the jury to believe that deceased manifested an intention to execute a prior threat, and the question is not how it appeared to the jury but how it looked to the appellant, the jury should have been instructed that if from the acts or words coupled with the acts of deceased it reasonably appeared to appellant viewed from his standpoint, that deceased was about to carry the threats into execution appellant would be justified in acting; for it is to him, necessarily, the intention must appear to be manifest, and not to the jury or to some other person differently situated, and the judgment must be reversed and the cause remanded. Following: Williams v. State, 87 Texas Crim. Rep., 280. Distinguishing: Darnell v. State, 58 Texas Crim. Rep., 585.

Appeal from the District Court of Coryell. Tried below before the Honorable J. R. McClellan.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Williams & Williams* and *McClellan & Cross*, for appellant.—On question of court's charge on threats: Lundy v. State, 59 Texas Crim. Rep., 136, and cases cited in the opinion.

On question of court's charge on self-defense: Gunn v. State, 234 S. W. Rep., 399; Smith v. State, 148 id., 699; Gardner v. State, 48 id., 170.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Coryell County of murder, and his punishment fixed at fifteen years in the penitentiary.

Appellant and deceased were near neighbors. Appellant moved out of a house in December and in the latter part of said month deceased moved into said premises which he had rented. Said house was situated on the west side of a road and appellant moved into another house on the east side of said road and apparently not more than a couple of hundred yards from the one occupied by deceased, his wife and child. There had without dispute been bad feeling between the men prior to this time. Appellant testified that in September or October preceding, deceased had come into a stubble field and had begun plowing therein; that he, appellant, took a shotgun and went out into the field and stopped at a point some twenty feet distant from where deceased was and ordered him to leave the field, which he did. It seems also true that prior to said occurrence appellant claimed that deceased and one Wilson had misrepresented a difficulty had between him and another man over some question of rent. On the day appellant ordered deceased out of said field, as the two men were walking away, appellant continued to charge deceased with his supposed participation in the spreading of the story about the rent trouble. Deceased denied having had anything to do with it but appellant told him he had traced it to him and Wilson. When deceased was getting ready to move into the premises occupied by him at the time of this homicide, he seems to have had several conversations with appellant regarding same. Appellant had a horse lot or some kind of enclosure which he first proposed to leave, and had a water trough which he proposed to leave at the well on the place upon which deceased was moving, if deceased would let him water his stock at the well. This deceased declined to do because of the way appellant had treated him about the plowing above mentioned. Appellant then concluded to tear down and remove the horse lot referred to and also carry away the water trough. Thereafter he and deceased met several times but do not seem to have spoken to each other. There was no fence between the land rented by deceased and that of appellant and at some time shortly before this homicide appellant began building a fence through the field apparently. He testified that while digging post holes for this fence he saw deceased get on his horse and that he rode down into the field and made a circle about appellant some twenty-five steps away and then rode off, neither man

speaking to the other.  Appellant testified that he met deceased in the
road and that when deceased saw him coming he stopped, whereupon
appellant drove around him, neither of the men speaking on this
occasion.  On the day of the homicide both men seemed to have been
away from home, and when appellant returned he said that he found
the mules of deceased in his field.  He seems to have taken no steps
to remove them.  Later deceased came home and went down into
appellant's field and after some trouble drove the mules out into the
road and started them toward his house.  As deceased, following the
mules, passed the house of appellant, the latter walked out to the
fence next to said road.  He had put his pistol in his pocket.  The
place where appellant stood inside his fence was some two or three
feet higher than the ditch on the roadside left by the recent working
of said road.  There is a dispute in the testimony as to which side of
said road deceased was on.  His wife, who viewed the occurrence from
her house, testified that deceased was walking along in the ditch next
to appellant's fence and that when he reached the point where he
was accosted by appellant, she could see that some words passed be-
tween the men and that appellant pulled out his pistol and shot
deceased twice.     Appellant, his wife and his witness Keenum in-
dicate that deceased was going north toward his home traveling on
the west side of said road, appellant's house being on the east side.
Appellant and Keenum say substantially that when deceased reached
a point opposite appellant's house, the latter walked out to the fence
and told deceased that he must keep his stock out of his field and if
he did not appellant was going to phone the constable to put them up.
The two men began to make statements more or less recriminatory
until, as claimed by appellant and Keenum, deceased remarked,
''Damn you, if you want trouble, or if you want to have a fuss, you
can have it now,'' and started across the road toward appellant.
Appellant said that deceased was about twenty-five or thirty feet
from him when he started toward him.  When the shooting took
place deceased was near the east side of the road or in the ditch just
east thereof.  Appellant used an automatic pistol, firing continuously,
as he said, and very close together as stated by the wife of deceased.
Both bullets entered the right side of deceased near the arm pit.  Ap-
pellant then walked to his house and told his wife to be calm, that he
had to do it, and shortly thereafter telephoned news of the trouble.
Keenum went to deceased and aided by the latter's wife, assisted in
carrying him to his home where he died in something like an hour.
There was no weapon of any kind found upon deceased.  He was in
his shirt sleeves.

Appellant's bills of exception Nos. 1 and 2 complain of the action
of the learned trial judge in regard to the venire.  The sheriff's re-
turn on the special venire facias was filed with the district clerk on Sat-
urday August 5th before the case was set for trial Monday August

7th. Appellant was on bail. The record shows that he obtained no copy of the venire list before his case was called for trial, but when he objected going to trial until he had been furnished with a list of the veniremen, the court offered to postpone the trial until the clerk could make and furnish such list, but appellant's counsel waived the furnishing of same. We see no error in this procedure.

The State through its Assistant Attorney General objects to the consideration of appellant's bills of exception Nos. 3 to 8 because in question and answer form. The objection must be sustained. Attention is again called to Art. 846, Vernon's C. C. P., from which we quote:

"Provided, that such stenographer's report when carried into the statement of facts or bills of exception, shall be condensed so as not to contain the questions and answers, except where in the opinion of the judge, such questions and answers may be necessary in order to elucidate the fact or question involved."

Many cases have been decided by this court in which it has declined to consider bills of exception which are violative of this statute. The bills of exception in question are in question and answer form and none of them reflect the fact that it was deemed necessary by the learned trial judge that they be in such form in order to make clear any question or issue involved. If considered, however, no error would appear because none of said bills of exception show that an objectionable juror as that term has been defined by this court, was forced upon appellant. See Maines v. State, 35 Texas Crim. Rep., 113; Keaton v. State, 40 Texas Crim. Rep., 145; Connell v. State, 45 Texas Crim. 153.

Keenum, an eyewitness, put on the stand for the defense, swore that just before appellant shot deceased the latter said: "Damn you; if you don't want to get along with me, you don't have to," and started across the road toward appellant. The witness was then asked: "What did you think; what impression did this make on your mind?" Objection by the State was sustained. If permitted Keenum would have sworn:

"I thought deceased was about to make a deadly attack upon the defendant and was impressed that deceased had a pistol and thought I could see the imprint of same under his shirt, and thought he was going to draw a pistol and shoot the defendant."

In the same bill of exceptions, referring to the movements of deceased before he went to drive his mules out of the field, this witness was also asked: "What did you think when you saw him going across the road to the field?" His answer would have been:

"I thought when I saw deceased going across to the field that he was armed. I thought when he left the pump and went in the house that he went in to get a gun, and I was impressed that I could see

the wind blowing against something underneath his shirt and I thought it was a pistol.''

In qualifying this bill of exceptions the learned trial judge states that he offered to let witness relate all that he saw or heard, but that the other testimony of said witness negatived the proposition that he saw or heard anything which would justify or produce the thoughts or impressions to which he offered to testify. Both questions were objectionable. Neither answer was admissible. That part of it relating to the fact that witness saw an imprint of something under the shirt of deceased, might be given in answer to a proper question, and that from the size and shape of same it appeared to appellant that deceased had a pistol, but we know of no well considered authority holding that conjectural opinions of future occurrences based on no greater development of facts than here appears, are admissible. Appellant cites the case of Latham v. State, 75 Texas Crim. Rep., 575; 172 S. W. Rep., 797 as authority. In our opinion the conclusion reached in said case is not supported by any of the authorities therein cited, even though the facts of said case much more strongly support the holding of the court therein than do the facts in the instant case merit the application of such principle. In said case a witness named Bynum said that just before the accused fired deceased threw his left hand up and dropped his right hand down, and when his hand got about *there* it looked like the gun fired. Deceased threw his right hand down to about his belt and threw his hand to his side at the same time the lady drew the gun. The witness was asked: ''What did you think he was doing with his right hand?'' If permitted witness would have answered that the impression on his mind was that deceased was attempting to draw his pistol. The Latham case cites and quotes from Thomas v. State, 40 Texas, 43; Cochran v. State, 28 Texas Crim. App., 431, and Harrison v. State, 28 S. W. Rep., 284. Each of said cases on its facts, shows that a witness, himself present and an actor, who had given evidence of some act of his own as part of the res gestae of the transaction, was permitted to explain why he so acted. Digressing, we observe that Mr. Branch in his Annotated P. C., Sec. 92, cites many authorities holding that where a detailed act, etc., is in evidence, any other act, declaration, etc., necessary to make it fully understood or to explain same,—may also be given in evidence. The Latham case cites and quotes from Navarro v. State, 24 Texas Crim. App. 381. The question under discussion by Judge Hurt therein was the admissibility of the opinion of a woman as to what caused the death of the foetus in an abortion case. Judge Hurt held her opinion inadmissible. We reproduce the quoted part of said opinion:

''Assuredly, if one receive a blow which leaves an immediate marked impress, that is appreciable by the senses of him who receives it, or that is in a like manner made sensible to bystanders, neither the in-

jured party nor the onlooker need be an expert to qualify him to testify that the injury was the result of the blow given.''

If we understand this quotation, it appears against rather than in support of the proposition that one may be permitted to state what he thought another was going to do who had started across the road toward a third person who was some twenty-five or thirty feet away. We entertain the same view of the proposition quoted from Mr. Wharton in the Latham opinion, same being as follows:

''Impressions which are primary and for which no substituted proof is conceivable can be put in evidence, whereas an impression which is merely a secondary idea of that of which a more accurate idea is obtainable cannot be received.''

We deem the latter part of this quotation specially applicable in the instant case. Keenum could not give testimony to an impression which was but a secondary idea of the purposes, intentions and future acts of deceased. The quotations in the Latham case, supra, from Mc-Kelvey on Evidence, from Mr. Chamberlayne, and Mr. Wigmore but relate to what is a well settled rule in this State, i. e. that a witness who undertakes to testify as to emotions, manners, physical appearances, mental and psychological conditions which find expression in ways difficult, if not impossible, to describe in detail, may give testimony as to his opinion in regard to such matters. Numerous instances and decisions illustrative will be found in Branch's Annotated P. C., Secs. 131-132. The Latham case does not seem supported by its authorities, and while the question discussed was whether the witness might state his opinion as to what deceased *was doing with his hand,* both the question asked and the expected answer are dangerously near the border line referred to by Mr. Wharton in the question above.

Where would the rule contended for by appellant herein lead us? Take the second question set out in his bill of exceptions under consideration and it affords us a partial answer to the question. Keenum was asked *what he thought* when he saw deceased going across the road to the field. This related to a time before deceased went down to drive the mules out. The desired answer would have been ''I thought he was armed. I thought when he left the pump and went in the house, he went to get a gun.'' It would not seem to require much argument to demonstrate the inadmissibility of this opinion. We regard this as consistent, however, and if the witness could be permitted to testify that he thought deceased was going to make a deadly attack on appellant when he started across the road toward him, we could see no good ground why he might not further state that thirty minutes before he had seen deceased go into his house and thought then that he went to get a gun, and that an hour before he saw deceased going along the road leading toward appellant's house, and then thought he was going to appellant's place to kill him. The State has the same right to opinion testimony as the defense. One

who asserts that he shot on appearances of danger as viewed from his standpoint, might find himself confronted by an array of witnesses who were present at the shooting and each of whom would then be permitted to swear that he saw the occurrence and that in his opinion the deceased was doing absolutely nothing indicating a purpose to attack or harm the accused. Soon the rules requiring that witnesses state facts would be abrogated and cases be tried on a constantly broadening rule of conjecture and opinion. While we doubt the soundness of the Latham case, supra, and the Mason case, 75 Texas Crim. Rep., 169; 183 S. W. Rep., 1153, which follows and cites the Latham case, we have no doubt as to the correctness of the rejection of the offered testimony in the instant case. Campbell v. State, 10 Texas Crim. App., 560; Lumbkin v. State, 12 Texas Crim. App., 341; Drake v. State, 29 Texas Crim. App., 265; Skaggs v. State, 31 Texas Crim. Rep., 563; Wilson v. State, 37 Texas Crim. Rep., 64; Swann v. State, 92 Texas Crim. Rep., 153; 242 S. W. Rep., 738.

Appellant testified in his own behalf that he knew deceased to be a dangerous man, that he believed him to be a man calculated to execute a threat which he had made, and also that he took seriously a threat which deceased had made to him. These facts being true, it was not erroneous for the court below to reject appellant's proffered statement that he honestly thought and believed deceased to be a dangerous man.

Keenum made a written statement of the facts on the night of the homicide. As part of same he stated that he was positive that said statement contained all that deceased said and did, and all that appellant said and did at the time of the fatal difficulty. When a witness herein he testified that deceased cursed appellant and started across the road toward him. Asked if he told these facts when he made the written statement referred to, he said he did not remember, and in another part of his testimony said he was not asked about these things. There was no error in admitting the written statement for purposes of impeachment. Same showed no mention of any such statement or action by deceased. The rule seems well settled that a witness may be impeached by proof that he now states something which in a former statement relative to the same manner, he omitted. Lewis v. State, 15 Texas Crim. App., 661; Hyden v. State, 31 Texas Crim. Rep., 403; Mealer v. State, 32 Texas Crim. Rep., 107; Gonzales v. State, 35 Texas Crim. Rep., 35; Compos v. State, 50 Texas Crim. Rep., 292.

Appellant has many objections to the charge of the learned trial court, the objections being fully reserved and special charges being asked in each instance. We find ourselves under the necessity of not quoting all that was said because of the needless length to which this opinion would be extended. We agree with neither the objection to the court's charge appearing in bill of exceptions No. 14, nor the com-

plaint of the refusal of a special charge in bill No. 15.   The Lewis case, 89 Texas Crim. Rep., 345, cited, criticises a charge somewhat similar to that given because it omitted to tell the jury that they must believe "beyond a reasonable doubt" that the killing was upon malice aforehought.   The court's charge herein has no such omission.

As part of his charge on adequate cause the trial court gave the following:

"Within the meaning of the expression 'adequate cause,' the following is deemed adequate cause.   Any act or acts done by the deceased, or word or words spoken by the deceased, coupled with any act, or acts done by him, or any condition, or circumstance which is capable of creating, and does create sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, is adequate cause, and where there are several causes to arouse passion, although no one of them would constitute adequate cause, yet all of the causes combined might be sufficient to do so."

Appellant excepted to this and asked the following special charge which was given:

"Gentlemen of the Jury:   Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty, in determining the adequacy of the provocation, if any, to consider in connection therewith all the facts and circumstances in evidence in the case; and if you find that, by reason thereof, defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law; and so, in this case, you will consider all the facts and circumstances in evidence in determining the condition of defendant's mind at the time of the alleged killing, and the adequacy of the cause, if any, producing such a condition."

This we think sufficient to bring into review by the jury all the facts and circumstances in evidence in determining the adequacy of the cause.   We do not think there is any merit in the complaint now aimed at the court's main charge as being too restrictive in this regard in view of the giving of said special charge; nor in refusing a special charge almost identical with the one given.

Bills of exception Nos. 19 to 24 do not seem to us to present any question calling for discussion.

The charge applying the law of manslaughter to the facts is in part as follows:

"Now bearing in mind the foregoing explanations, definitions and instructions, if you believe from the evidence in this case beyond a reasonable doubt that the defendant, W. G. Dunne, in the County of Coryell and State of Texas, and on or about the 19th day of February, A. D. 1922, did then and there unlawfully and voluntarily

kill A. W. Garren by then and there shooting him, the said A. W. Garren with a pistol, as alleged in the indictment, and if you further believe that at the time he did so his mind was laboring under such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection, and you further believe that such condition of the mind, if any, was produced by an adequate cause, as that term has hereinbefore been defined to you, then you will find the defendant guilty of manslaughter and assess his punishment at confinement in the penitentiary for not less than two years nor more than five years, in your discretion.''

Complaint is made that this places on appellant the burden of proving the mitigating facts and circumstances. In another part of the charge the court told the jury that if they found appellant guilty of some degree of homicide but had a reasonable doubt as to whether the offense was murder or manslaughter, they should give the appellant the benefit of the doubt and find him guilty of no higher grade of offense than manslaughter. We do not think the main charge open to the objection urged by appellant, nor are we able to agree to the soundness of the proposed special charge which presents a great departure from established charges on the subject. We see nothing in Moore v. State, 88 Texas Crim. Rep., 624, contrary to our views thus expressed. We have examined the complaint of the charge on self-defense and the special charge offered as corrective thereof as appear in bills Nos. 27 to 29, but do not think they present any meritorious contention.

We do not agree with appellant that the charge of the trial court on self-defense was too abstract but on the contrary think it sufficient. We have stated the facts above. Appellant testified that deceased cursed him and started across the road toward him and that as he came he made a move to his side. Appellant saw no pistol. He said deceased threw his hand to where appellant thought he saw the imprint of a pistol under his shirt. He could not say whether deceased put his hand under his shirt or not, nor was there any evidence from the witness Keenum who had apparently the same opportunity that appellant did, to observe the movements of deceased, which would appear to indicate that deceased was making any offensive movements with his hand or attempting to draw any weapon.

There is an exception to the refusal of the court to change his charge on the question of retreat so as to make same applicable to the proposition of apparent danger. The charge as given told the jury that one unlawfully attacked was not bound to retreat in order to avoid the necessity of killing his assailant. We find nothing in the court's charge in any way suggesting that the accused should have resorted to other means to have avoided the killing, and in our opinion the charge given was sufficient.

98 T. C.—2.

The court's charge on self-defense contained the following:

"If, therefore, the defendant in this case killed the deceased, he was justified in doing so, if he did do so, to prevent deceased from murdering him, or inflicting serious bodily injury upon him, the defendant, provided it reasonably appeared to the defendant, by the act, or by the words coupled with the acts of deceased that it was the purpose and intention of deceased to murder the defendant, or to inflict serious bodily injury upon him, the defendant, viewed from the standpoint of the defendant; and provided the killing took place while the deceased was in the act of committing such murder, or of inflicting such injury on the defendant, or after some act done by the deceased showing evidently an intent on his part to murder the defendant, or to inflict serious bodily injury upon him, the defendant, viewed from the standpoint of the defendant, and if it reasonably appeared to the defendant, from the circumstances of the case, that danger existed he had the same right to defend against such apparent danger and to the same extent that he would have was the danger real, and this would be true even though there was no real danger. And if you have a reasonable doubt as to whether or not the killing took place under such circumstances, it will be your duty to give the defendant the benefit of such doubt and acquit him and say by your verdict not guilty."

In our opinion this fairly presented the issue of self-defense both against real and apparent danger and is not subject to the criticism that it unduly emphasized self-defense as against real danger only. Nor do we think under the facts of this case that the charge of the court on threats was too restrictive. In paragraph 12 of the charge appears the following:

"An attack upon the person of an individual in order to justify homicide must be such as produces a reasonable expectation or fear of death, or some serious bodily injury, but, in this connection, you are instructed that it is not necessary to the right of self-defense that the danger did actually exist. If it reasonably appeared to the defendant from the circumstances of the case that the danger existed, he, thus threatened with such apparent danger, had the same right to defend himself against it, and to the same extent as he would have were the danger real, and, in determining whether there was a reasonable belief that danger did exist, the appearances should be viewed from the standpoint of the defendant alone, and from no other standpoint."

Also in the charge on self-defense above quoted the court used the expression:

"Provided it reasonably appeared to the defendant by the acts, or by the words coupled with the acts of deceased, that it was the purpose and intention of deceased to murder the defendant, or inflict serious bodily injury upon him," etc.

The rule is well understood that the charge as a whole must be looked to and that it is not necessary that the court continually repeat general expressions in each paragraph of the charge.

The shots fired by appellant were in quick succession. Both took effect. The pistol was an automatic, and appellant testified that he supposed he fired continuously. There was no error in the charge in failing to instruct the jury on appellant's right to continue to shoot. Woodward v. State, 54 Texas Crim. Rep., 89. The cases cited by appellant are on facts so different from those here as to make them not authoritative. A different question might arise where there was a shooting and an interval in which the jury might reasonably have concluded a change of attitude on the part of the accused and a different right to have arisen. No such situation is here presented.

There was evidence of uncommunicated threats and the learned trial judge failed and refused to charge that such evidence could be considered by the jury in determining who began the difficulty. An exception was leveled at this omission and a special charge asked, which was refused. The question arises, was this error, and if so, was it such error as to call for a reversal of this case. The law applicable to any case turns on the facts of that individual case. We have set out the facts at some length above. We have here the situation of a man who puts an automatic pistol in his pocket and walks out to a road up which another man is going toward his home, the two men not being on speaking terms. Appellant called deceased and told him to keep his stock out of his field. We quote from appellant's testimony:

''When I walked out there, Alex was still walking along and I told him I wanted him to keep his stock out of my field, and he said he would. He did not say that they had gotten out. Alex and his wife had been away from home that day. I don't know whether the mules had got out while he had gone or not. I suppose they had. He said he would keep them out, that they had gotten out. I told him then I believed that they had gotten out. At the time I was talking to Alex there at my place, I was about 25 or 30 feet of him. I then told him that I wanted to treat him white about it, I have forgotten the exact words, whether I said white or right, and that if he didn't the next time I was going to phone for Bill Edwards to come and get the mules and put them up. I told him I didn't want any trouble and he said 'God damn you if it is trouble you are hunting, you can get it.' When he made that remark he was 25 or 30 feet from me. He said, 'God damn you, if it is trouble you want, you can get it.' And when he said that he started towards me. He had this right hand over here on his side. I saw the pistol or whatever it was still sticking out. It was something in the shape of a pistol still sticking out there. I don't know about seeing the imprint of the handle and barrel about sticking out there. Q. How far up did the

pistol handle go when you saw it? A. Five or six inches, I believe.'' The handle was crooked over so he could get it by his right hand. Crooked to the front. He had gone about three or four steps before he put his hand there and grabbed at the impression. I can't say whether he put his hand on the inside of his shirt or not. He couldn't have very well gotten it out by just grabbing hold of the shirt. I don't remember of him going inside of his shirt and getting his hand like that (counsel indicated). I remember he made a move like that. I could not see whether he got his hand on anything. I don't recall much about whether his hand covered up the handle or not. He had gotten three or four steps before his hand went for the pistol, I don't remember whether, after he got three or four steps, whether he continued to hold his hand there until he got up within three or four feet of me, I know he had both of them there, I don't know exactly whether he had his left hand down by his side or not at that time. When he got within three or four feet of me he still had his hand there but he never had got it out; he was trying to get it out of his britches, or whatever he had in there. I think he pulled his shirt-tail up. He did not pull it plumb out over the handle of what I saw there. He never did get it out over it, I never did see it.''

The entry of the two bullets fired by appellant into the right side of deceased near his right arm pit, has been mentioned. One of them which entered between the fourth and fifth ribs under the right arm, lodged under the skin two and a half inches above the left hip, passing between the ninth and tenth ribs. The other entered below the point of the right shoulder blade. We have stated these facts as illustrating our view that it was a most serious question as to whether appellant had any right to assert self-defense, even if deceased started at him. What caused deceased to go toward appellant? What was appellant's object in putting his pistol in his pocket and walking out to the road and standing on a bank inside his fence several feet higher than the ground on the outside, and accost a man toward whom he admits he had hard feeling and who was not on speaking terms with him, and demand that he keep his stock out of his field or he would telephone the constable. Deceased had no weapon. According to Keenum appellant shot deceased when the latter was eight or ten feet from appellant on the other side of the road and had drawn no weapon or exhibited any. These facts so strongly support the proposition that appellant provoked the difficulty with intent to cause deceased to make a demonstration of which he might take advantage and kill him, as that we deem the failure of the trial court to submit the law of uncommunicated threats as being of no material injury. Carver v. State, 67 Texas Crim. Rep., 116. While the question of provoking the difficulty would be one for the jury under appropriate instructions, the facts are before

this court and must be considered by us in determining whether or not the omission of a matter in the charge would be deemed of such materially erroneous character as to cause us to reverse the case under Art. 743, Vernon's C. C. P. We have come to the conclusion that the failure to give the charge was not error for which we should reverse.

There are a number of bills of exception to the argument. All have been considered. It was in testimony that appellant went to Gatesville to hear the arguments in the Twyman case, and that on the way back a witness who testified herein said that he told appellant that deceased objected to his putting in the cross-fence between them. According to this witness appellant then said that he ought to kill the s-n of a b-h. We do not think the argument in which an apparent reference is made to this testimony and the fact that appellant heard the argument in the Twyman case, or any of the other arguments objected to, of that inflammatory or prejudicial character as to call for criticism on our part.

The case was hotly contested and ably defended. We have tried to consider all of the questions raised, but being of opinion that none of them present reversible error, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

June 25, 1924.

HAWKINS, JUDGE.—The opinion heretofore rendered is attacked upon the ground that it is erroneous in holding that the refusal of the trial judge to charge upon uncommunicated threats did not call for a reversal. Exceptions were presented complaining of the omission of such instructions from the main charge, and the following special charge was requested.

"Uncommunicated threats are always admissible to determine among other things, where that is an issue in the case, who began the difficulty—who was the aggressive party—defendant or deceased? So, in this case, evidence had been introduced before you relating to threats made by deceased, A. W. Garren, against defendant, which threats were not communicated to defendant before the killing. You will consider these threats, if any, in determining whether deceased or defendant began the difficulty resulting in the death of deceased."

It may be stated that the evidence is in conflict as to who was the aggressor in the difficulty. There was proof of both communicated and uncommunicated threats made by deceased against appellant. In support of the contention that under these circumstances

a charge on uncommunicated threats should have been given we are cited to Kirklin v. State, 73 Texas Crim. Rep., 251, 164 S. W., 1016; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W., 64; Aycock v. State, 88 Texas Crim. Rep., 238, 225 S. W., 1099.  When it becomes an issue as to who may have been the aggressor in a difficulty, that uncommunicated threats made by deceased are provable is not an open question.  It is recognized by Wharton (10th Ed. page 1505, Sec. 757), and Underhill (2d Ed. Sec. 506), and the rule has firm adoption in our own decisions both on principle and precedent. (See Branch's Ann. P. C. page 1170, Sec. 2079.)  But that is not the question with which we are dealing.  We are called upon to decide whether the court shall be required to single out evidence of a particular character and charge the jury thereon.  So far as our own investigation of authorities has extended, or to which we have been cited, the Kirklin case (supra) decided in 1914 is the first one announcing it to be reversible error for the court to refuse a charge upon uncommunicated threats.  The following language is found in the opinion: "It is unnecessary to cite the authorities as they are quite numerous;" this statement from the eminent jurist who wrote it has caused us to make special and diligent search and our failure to discover the authorities has led us to believe that. in this reference he inadvertently confused the right to introduce evidence of uncommunicated threats (for which there is abundant authority) with the question of the propriety of instructing the jury relative to such evidence.  The question was again before this court in the Aycock case (supra) in 1920.  The learned judge .who presided at the trial of Aycock declined to instruct the jury on uncommunicated threats on the ground that same would have been a charge upon the weight of the evidence.  This was adverted to in the opinion, and the same great judge who wrote in the Kirklin case again said:

"The rule is definitely settled that, when the issue is of vital importance as to who began the difficulty, the court should charge as to the uncommunicated threats of deceased.  Kirklin v. State, 73 Texas Crim. Rep., 255, 164 S. W., 1016; Huddleston v. State, 54 Texas Crim. Rep., 98, 112 S. W., 64, 130 Am. St. Rep., 875; Pape v. State, 54 Texas Crim. Rep., 464, 113 S. W., 759; Trotter v. State, 37 Texas Crim. Rep., 468, 36 S. W., 278; Pitts v. State, 29 Texas App., 374, 16 S. W., 189; Levy v. State, 28 Texas App., 203, 12 S. W., 596, 19 Am. St. Rep., 826.  See, also, State v. Blee, 133 Iowa, 733, 111 N. W., 19."

A review of the authorities cited in the foregoing quotation reveals that the Kirklin case is the only one which supports the holding in Aycock's case.  In Huddleston's and Trotter's cases the trial judge undertook to instruct the jury relative to uncommunicated threats and in each instance the charges were held erroneous as being too restrictive.  The question of the refusal to charge upon the subject was not

before the court. In Pape's case no question of the refusal of a charge upon the subject under discussion was raised. The point there was as to the admissibility in evidence of uncommunicated threats. Likewise, in the Pitts case, no question was presented as to the effect of the refusal of a charge upon the subject. A new trial was requested for newly discovered evidence of uncommunicated threats and it was held that under the facts of the Pitts case the refusal of the new trial upon that ground was not error. In Levy's case the question of charging upon uncommunicated threats was not raised. The case of State v. Blee, 133 Iowa, 733, (supra) does not sustain the announcement that the refusal to charge on uncommunicated threats would be erroneous, but held only that the court having undertaken to charge upon it the instruction given was too restrictive, this being the same question before this court in the Huddleston and Trotter cases.

The present writer has such high regard for the ability and legal wisdom of the author of the Kirklin and Aycock opinions that it is with the utmost reluctance he expresses views out of accord therewith, and only the firm conviction that to follow them upon the matter now under consideration would engraft upon our jurisprudence an innovation leading to confusion induces him to do so. There is no better established rule than that:

"It is not proper for the court to single out particular facts or specific parts of the testimony and charge thereon. To do so would be instructing on the weight of the evidence."

Under Note 125, Article 735, 2 Vol., Vernon's Crim. Statutes. are listed some fifty cases supporting this recognized rule. Why are either communicated or uncommunicated threats receivable in evidence? Broadly stated the answer is upon the issue of self-defense. Why is it necessary for the court to charge specifically upon communicated threats? Solely because the statute itself (Article 1143, P. C.) under certain circumstances makes that a ground of justification for one charged with an unlawful killing, and it is therefore necessary and proper that the jury be so instructed. In the absence of the statute evidence of communicated threats would be pertinent upon the general issue of self-defense and a charge upon the latter issue would be all that, under ordinary circumstances, would be necessary. Proof of uncommunicated threats become a fact to be considered by the jury upon the defensive issue just as any other fact in the case. It is true one of its peculiar functions is to enable the jury to solve the question as to who may have been the aggressor; but why is it necessary to solve that question? Simply and solely to reach a conclusion as to the truth or otherwise of the plea of self-defense. Then why should it be required that the trial judge single out uncommunicated threats and charge on them, any more than any other character of evidence receivable to solve the same question. A, with a

gun, is seen secreted along a road which B is traveling and later B kills A near this same spot, and defends on the ground that A commenced the attack and that B killed in self-defense; proof of A's conduct would be highly important upon the issue of self-defense, but the trial court would not be called upon to instruct the jury for what specific proof of A's conduct was admitted in evidence; to do so would offend against the general rule last above stated. Threats made at the time of and during the difficulty are receivable in evidence as part of the res gestae, and may be considered by the jury in solving the issue of self-defense as well as any other issue upon which they have a bearing, yet it is not required that a charge be given relative to threats so uttered. (See Sec. 2075, p. 1168, Branch's Ann. P. C.) Where manslaughter is predicated upon passion arising from one of the causes made adequate by the statute it is the duty of the court to instruct that if such cause existed and passion was aroused thereby it would be adequate to reduce a killing to manslaughter. Why? Because the statute specifically so provides; but if the cause relied on be general conditions not specifically named in the statute it would be error for the court to instruct that such conditions would in law be adequate cause. The jury passes upon it under a general charge on manslaughter (See Sargent v. State, 35 Texas Crim. Rep., 338, 33 S. W., 364, and authorities annotated at top of page 1150 Branch's Ann. P. C.), just as the jury considers uncommunicated threats under a general charge upon self-defense. We think it may be stated as a sound general rule that the trial court is not required to charge upon any specific evidence unless it be introduced by the State for a particular purpose, and is likely to be appropriated by the jury improperly against the defendant on trial, which is illustrated by a charge limiting impeaching evidence in certain instances. This rule has no application in a case like the one before us. The proof of uncommunicated threats is introduced by the defendant. Where the court's charge does not restrict the purpose for which such proof is made the evidence is usable by the jury in all respects for the defendant. In no sense is it detrimental to him, and the withholding of a charge thereon appears to be more to his benefit than to his hurt. In Williams v. State, 95 Texas Crim. Rep., 354, 254 S. W., 568, a special charge somewhat peculiarly worded, but having uncommunicated threats as its subject, was held on the weight of the evidence in the absence from the main charge of anything restricting the purpose for which such evidence was admitted. Whether our holding in the original opinion in the instant case that the refusal of such requested charge was not reversible error, was or was not based upon a misconception of the facts as it related to a probable provoking of the difficulty by appellant, we think immaterial in view of the foregoing general discussion of the subject, and we conclude that nothing appears in the main charge of the court which can in any wise

be construed as a limitation on the purpose for which uncommunicated threats were in evidence, and therefore no error was committed in declining to give the special charge upon that subject. The main charge given in the instant case does not even limit appellant's right to act upon threats to those which had been communicated to him, but from the wording of the instructions appellant could justify himself upon the ground of any threat made whether communicated or uncommunicated, and the requested charge would have been more restrictive than the one given, and in this respect would have been against appellant's interest.

The court charged upon self-defense based upon apparent danger from the acts or words coupled with the acts of deceased, and in connection therewith the jury were told that in determining whether accused entertained a reasonable belief that danger existed the appearance should be viewed from his standpoint alone. The charge upon threats is entirely disconnected from the general charge upon self-defense and reads as follows:

"When the defendant accused of murder seeks to justify himself on the ground of threats against his own life or serious bodily harm, he may be permitted to introduce evidence of the threats made, but *the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the person killed by some act then done, manifested an intention* to execute these threats so made. Now, if you believe from the evidence in this case that prior to the homicide, or at the time of the homicide, the deceased made threats against the life of the defendant, and you further believe that at the time of the killing A. W. Garren, the deceased, by some act then done manifested an intention to execute the threat so made, or if you have a reasonable doubt as to whether or not he did manifest an intention to execute the threat so made, then you will give the defendant the benefit of such doubt and acquit him."

This charge contains all the law given relating to appellant's rights under "threats." It was specifically excepted to because it did "not submit the defense based on communicated threats from the standpoint of the defendant, and limits the manifestation therein mentioned to acts only and not words coupled with acts." To correct what was thought to be a defect in the foregoing instruction appellant requested the following special charge which was refused:

"If you believe from the evidence that prior to the homicide it was communicated to the defendant that threats had been made by the deceased to kill or inflict serious bodily injury upon the defendant and that defendant believed that such communications as to threats made against him were true, whether the same were in fact or not, and at the time of the homicide, the deceased, by any acts then done or by words coupled with such acts, if any, reasonably created with-

in the mind of defendant, as viewed by him from his standpoint at the time, an apprehension or fear that the said deceased was in the act of executing the threats so made or was about to execute the same, or the deceased by his conduct, coupled with words, if any, indicated that he was then and there about to unlawfully attack the defendant and inflict upon him death or serious bodily injury, and that defendant, so believing, shot and killed deceased, that the same would be justifiable homicide. If you should so believe or have a reasonable doubt thereof, then you will acquit the defendant."

It will be seen that both by exception and requested charge appellant's complaint was called to the attention of the court. We believe the criticism that the charge given was too restrictive is well taken. It only required the *jury* to believe that deceased *manifested* an intention to execute a prior threat; in view of all the facts in evidence the jury might not have believed any act done by deceased did manifest any such intention: But the question is not how it appeared to the jury but how did it look to appellant. The jury should have been told that if from the acts or words coupled with the acts of deceased it reasonably appeared to appellant, viewed from his standpoint, that deceased was about to carry the threats into execution appellant would be justified in acting, for it is to him necessarily the intention must appear to be manifest and not to the jury or to some other person differently situated. The question under discussion has been considered in many cases, and the charge objected to has been condemned. Williams v. State, 87 Texas Crim. Rep., 280, 221 S. W., 287; Sims v. State, 9 Texas Crim. App., 586; Gonzales v. State, 28 Texas Crim. App., 130, 84 S. W., 231; Barnes v. State, 61 Texas Crim. Rep., 37; 133 S. W., 892; Maclin v. State, 65 Texas Crim. Rep., 384, 144 S. W., 951; Lundy v. State, 59 Texas Crim. Rep., 131; 127 S. W., 1032; Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W., 335; Adams v. State, 47 Texas Crim. Rep., 347, 84 S. W., 231; Ayres v. State, 62 Texas Crim. Rep., 428, 137 S. W., 1146.

In writing upon rehearing heretofore our attention was particularly directed to appellant's contention that a charge upon "uncommunicated" threats was demanded and the criticism of the charge given upon communicated threats was disposed of without a careful examination of the authorities, and upon the ground that considering the charge in its entirety no such error appeared as would demand a reversal. Upon more mature reflection, and analysis of our former opinions we have become convinced that we were in error in this regard. The instruction relative to threats was not connected in any way with the other portions of the charge upon appellant's right to act upon apparent danger and to this respect differs from the charge in Darnell's case, 58 Texas Crim. Rep., 585, 126 S. W., 1122.

The former opinion upon rehearing overruling appellant's motion is withdrawn, and the present opinion substituted therefore.

For the error discussed the judgment of affirmance is set aside, the motion for rehearing granted, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*